Filed 3/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 52

Interest of G.L.D. 

State of North Dakota, Petitioner and Appellee

v.

G.L.D., Respondent and Appellant

No. 20100230

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Brian David Grosinger, Assistant State’s Attorney, 210 2nd Avenue NW, Mandan, N.D. 58554, for petitioner and appellee.

Troy Robert Morley (argued), 218 South 3rd Street, Grand Forks, N.D. 58201, and Steven M. Light (on brief), 2700 12th Avenue South #A, Fargo, N.D. 58103, for respondent and appellant.

Interest of G.L.D.

No. 20100230

Kapsner, Justice.

[¶1] G.L.D. appeals from a district court order denying his petition for discharge from treatment as a sexually dangerous individual after the court found he remains a sexually dangerous individual.  G.L.D. argues the district court erred in deciding the State proved by clear and convincing evidence that he remains a sexually dangerous individual.  We hold the court’s finding that G.L.D. remains a sexually dangerous individual is not clearly erroneous, and we affirm the order.

I

[¶2] G.L.D. was incarcerated in 1996 after a conviction for gross sexual imposition.  As his release date approached, the State petitioned to commit him for treatment as a sexually dangerous individual under N.D.C.C. ch. 25-03.3, and in June 2007, he was committed to the custody of the executive director of the Department of Human Services for treatment.  In October 2008, G.L.D. petitioned for discharge from treatment.  Dr. Lynne Sullivan, a psychologist at the State Hospital, evaluated G.L.D. in October 2008, and she concluded he continued to be a sexually dangerous individual and recommended he remain in the custody of the Department.  The court appointed Dr. Joseph Plaud, an independent psychologist, to perform an independent evaluation of G.L.D.  At G.L.D.’s request and because Dr. Plaud had not completed his independent evaluation, the court twice continued the hearing on G.L.D.’s petition for discharge from treatment.  After the court denied a third request for a continuance, the court granted G.L.D.’s motion to withdraw that petition for discharge.  Dr. Plaud thereafter submitted a January 5, 2010, evaluation, in which he concluded G.L.D. was not a sexually dangerous individual.  G.L.D. then filed this petition for discharge from treatment.  Dr. Robert Lisota, a psychologist at the State Hospital, evaluated G.L.D. in February 2010, and concluded G.L.D. remains a sexually dangerous individual.  

[¶3] At evidentiary hearings on G.L.D.’s petition for discharge, the district court heard testimony from Dr. Lisota, Dr. Plaud, and Dr. Sullivan and admitted into evidence the reports by Dr. Lisota and Dr. Plaud.  The court thereafter denied G.L.D.’s petition for discharge from treatment, finding by clear and convincing evidence he continues to be a sexually dangerous individual.  The court found G.L.D. “continues to have a congenital or acquired condition manifested by a sexual disorder, a personality disorder or other mental disorder making it likely he will engage in further acts of sexually predatory conduct” and specifically identified his disorders as “paraphilia and anti-social personality disorder.”  The court also relied on “the high scores on the actuarial risk assessment instruments and the finding of a high degree of [p]sychopathy” to find G.L.D.’s “condition makes [him] likely to engage in further acts of sexually predatory conduct meaning [his] propensity toward sexual violence is of such a degree as to pose a threat to others.”  The court further found G.L.D. has serious difficulty in controlling his behavior as evidenced by his “two convictions for sexual offenses and two dismissals or acquittals of sexual offenses between these two convictions and his prison time; he continues to have difficulty following rules and has not completed any sex offender treatment that could reduce his risk to re-offend.” 

II

[¶4] “At a discharge hearing, the State has the burden of proving by clear and convincing evidence that the committed individual remains a sexually dangerous individual.”  
Matter of Midgett
, 2010 ND 98, ¶ 7, 783 N.W.2d 27.  Section 25-03.3-

01(8), N.D.C.C., defines a “sexually dangerous individual” as: 

[A]n individual who is shown to have [1] engaged in sexually predatory conduct and who [2] has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that [3] makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

We have construed that statutory definition of a sexually dangerous individual in conjunction with 
Kansas v. Crane
, 534 U.S. 407, 412-14 (2002), and substantive due process to require the State to prove the committed individual has serious difficulty controlling his or her behavior.  
G.R.H.
, 2006 ND 56, ¶ 18, 711 N.W.2d 587.  Under 
Crane
 and requirements for substantive due process, the definition of a sexually dangerous individual requires a connection between the disorder and dangerousness, including evidence showing the person has serious difficulty controlling his or her behavior, which distinguishes a sexually dangerous individual from the dangerous but typical recidivist in an ordinary criminal case.  
G.R.H.
, at ¶ 18.

[¶5] We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review.  
Midgett
, 2010 ND 98, ¶ 6, 783 N.W.2d 27.  In reviewing a district court’s order denying a petition for discharge, we give great deference to the court’s credibility determinations of expert witnesses and the weight to be given their testimony.   
Matter of Rush
, 2009 ND 102, ¶ 14, 766 N.W.2d 720.  We will affirm a district court’s order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence.  
Midgett
, at ¶ 6.

III

[¶6] G.L.D. argues the district court erred in deciding he remains a sexually dangerous individual under N.D.C.C. ch. 25-03.3.  He relies on the opinion and testimony of his expert, Dr. Plaud, to argue the State failed to show he suffers from any diagnosable sexual disorder or he has serious difficulty controlling his sexual behavior. He asserts the State did not prove he poses any greater threat than an ordinary recidivist in a typical criminal case.  The State responds G.L.D.’s history is full of examples showing he cannot control his behavior on any level.  The State argues the district court did not clearly err in rejecting Dr. Plaud’s opinion and in accepting Dr. Lisota’s opinion.

[¶7] Dr. Lisota’s February 2010, report stated G.L.D. “has a long and stable history with regard to ‘serious difficulty’ controlling his behavior” and he “is currently facing [m]enacing . . . and [s]imple [a]ssault . . . charges for assaulting [state hospital] staff.”  Dr. Lisota’s report stated G.L.D. was a 47 year-old male who had been incarcerated since 1996 for his most recent conviction for gross sexual imposition.  G.L.D.’s records report at least 50 criminal charges against him since he was 15, including charges for four sexual offenses and numerous other assault and terrorizing charges.  Dr. Lisota noted a woman identified as G.L.D.’s girlfriend reported at least six different assaults by him, including some allegations of “sexual assault on an otherwise willing partner.”  According to Dr. Lisota, the four other cases involving criminal charges for sexual behavior “all . . . emphasize physical violence to induce compliance.”  Dr. Lisota stated it was “reasonable to conclude [G.L.D.] derives some satisfaction from forcing sexual activity on non-consenting individuals” and his conduct was “consistent with a paraphilic coercive disorder” or “rape paraphilia” and was also “consistent with the inference of sexual sadism.”  Dr. Lisota opined there was “clear evidence for one or more paraphilias which to this date remain untreated.”  Dr. Lisota stated that G.L.D.’s history was “notable for his apparent inability or unwillingness to alter his behaviors, despite numerous treatment efforts over time as well as long periods of incarceration” and that his lack of participation in any form of treatment “provide overwhelming evidence that [he] is both highly psychopathic and an untreated sex offender to this point in time.”  Dr. Lisota’s report recognized some problems with the validity for some actuarial risk assessment instruments, but nevertheless concluded G.L.D. “meets the criteria of ‘likely to engage in further acts of sexually predatory conduct.’”  Dr. Lisota diagnosed G.L.D. with “a combination of sexual deviance and a high degree of [p]sychopathy” which indicates an “especially high risk for both violent and sexually violent reoffending.”  Dr. Lisota also reported G.L.D. had made no progress in a sex offender treatment program during the review period.  Dr. Lisota’s report concluded G.L.D. met the diagnostic criteria for paraphilia not otherwise specified “primarily through his aggressive and sexually inappropriate conduct towards female staff members” and for anti-social personality disorder through his “difficulty following staff directives, frequently assaulting staff and peers, ongoing irritability, anger management and ‘controlling’ behaviors.”  Dr. Lisota further opined the interaction of G.L.D.’s disorders predisposed him to engage in future sexually predatory conduct and to act impulsively and disregard the rights of others.  Dr. Lisota’s report stated the results of G.L.D.’s actuarial risk assessments, coupled with the diagnoses, indicate G.L.D. is a high risk for future sexually predatory conduct and concluded G.L.D. is a sexually dangerous individual.

[¶8] In contrast, Dr. Plaud concluded G.L.D. does not possess a mental disorder or personality disorder and is not a sexually dangerous individual.  Dr. Plaud concluded the State’s diagnoses is “wrong” and “a terrible confusion of the facts.”  Dr. Plaud concluded G.L.D. is able to control his sexual impulses and has no underlying mental condition making him likely to reoffend in a sexual manner.  Dr. Plaud said G.L.D. did not meet the diagnostic criteria for any paraphilia and his incarceration has had a behavioral and psychological impact on him, which is not associated with feelings of sexual excitement.  Dr. Plaud concluded G.L.D. is not a sexually dangerous individual because he possessed neither a mental abnormality nor a personality disorder as those terms are defined and understood in a sexual context. 

[¶9] The district court rejected Dr. Plaud’s opinion and accepted Dr. Lisota’s opinion.  The court found G.L.D.’s disorder is “paraphilia and anti-social personality disorder,” he has “high scores on the actuarial risk assessment instruments and the finding of a high degree of [p]sychopathy,” and he has serious difficulty controlling his behavior as evidenced by his “two convictions for sexual offenses and two dismissals or acquittals of sexual offenses between these two convictions and his prison time; he continues to have difficulty following rules and has not completed any sex offender treatment that could reduce his risk to re-offend.” 

[¶10] The district court’s findings could be more detailed, but they are sufficiently detailed to understand the bases for the court’s decision.  Dr. Lisota’s testimony and report provide evidence that G.L.D. has an extensive criminal history, including charges for four sexual offenses involving physical violence to induce compliance, coupled with the diagnoses of a high degree of psychopathy, paraphilia, and antisocial personality disorder and a failure to make progress in a sex offender treatment program.  Dr. Lisota’s testimony and conclusions directly conflict with Dr. Plaud’s testimony and conclusions.  We have repeatedly stated that “‘[e]valuation of credibility where evidence is conflicting is solely a trial court function.’”  
Matter of Hehn
, 2008 ND 36, ¶ 23, 745 N.W.2d 631 (quoting 
Alumni Ass’n v. Hart Agency, Inc.
, 283 N.W.2d 119, 121 (N.D. 1979)).  A choice between two permissible views of the weight of the evidence is not clearly erroneous.  
Interest of A.M.
, 2010 ND 163, ¶ 21, 787 N.W.2d 752.  We have also said that we will not engage in a contest over percentage points in assessing actuarial tests and determining whether an individual meets the requirements for commitment for treatment as a sexually dangerous individual; rather, we rely on independent judicial decision-making for the ultimate determination regarding a sexually dangerous individual.  
Hehn
, at ¶ 21.  

[¶11] Dr. Lisota’s report and testimony support the district court’s finding that G.L.D. remains a sexually dangerous individual and has serious difficulty controlling his behavior, including his sexual behavior, which distinguishes him from a typical recidivist in an ordinary criminal case.  We decline G.L.D.’s invitation to reweigh the experts’ testimony and reports.  Under our modified clearly erroneous standard of review, we conclude sufficient evidence exists from which the district court could conclude G.L.D. is a sexually dangerous individual and has serious difficulty controlling his sexual behavior, and we are not firmly convinced the court’s decision is not supported by clear and convincing evidence.  We therefore conclude the court’s findings are not clearly erroneous.

IV

[¶12] We affirm the district court order denying G.L.D.’s petition for discharge from treatment.

[¶13] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.