Filed 2/26/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 26

In the Matter of J.G.

Brian D. Grosinger, Morton 

County Assistant State’s Attorney, Plaintiff and Appellee

v.

J.G., Defendant and Appellant

No. 20120199

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Brian D. Grosinger (on brief), Assistant State’s Attorney, 210 Second Avenue NW, Mandan, N.D. 58554, for plaintiff and appellee.

Kent M. Morrow (on brief), 411 North Fourth Street, P.O. Box 2155, Bismarck, N.D. 58502-2155, for defendant and appellant.

Matter of J.G.

No. 20120199

Sandstrom, Justice.

[¶1] J.G. appeals from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual under N.D.C.C. ch. 25-03.3.  Concluding the district court did not err in finding J.G. engaged in sexually predatory conduct and the State established by clear and convincing evidence that J.G. remains a sexually dangerous individual, we affirm.

I

[¶2] In November 2002, J.G. was initially committed as a sexually dangerous individual, and his commitment was not appealed.  J.G. petitioned for discharge in 2003, 2004, 2005, and 2008, and each petition was subsequently denied.  J.G. did not appeal the denial of any of these petitions.  In June 2009, J.G. petitioned for discharge, and after a November 2010 hearing, a district court denied his petition.  J.G. appealed, arguing insufficient evidence supported his continued commitment, and we summarily affirmed.  
Matter of J.G.
, 2011 ND 73, ¶ 1, 799 N.W.2d 406.  In March 2012, the district court held a hearing on J.G.’s petition for discharge and annual review.  Robert Lisota, Ph.D., a State Hospital psychologist, and Stacey Benson, Psy.D., an independent psychologist, filed reports and testified before the district court.  At the hearing, the two experts agreed J.G. has a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction, and the respective diagnoses were made in their reports.  The experts disagreed, however, on whether he had previously engaged in sexually predatory conduct warranting commitment and whether he is likely to reoffend.

[¶3] Dr. Benson testified and wrote in her report that she is not certain J.G.’s crime of indecent exposure at age 12 constitutes the statutory definition of sexually predatory conduct.  In her testimony and report, Dr. Benson expressed her concern with the difficulty in determining whether J.G. is likely to reoffend, because the juvenile actuarial instruments used to predict future risk are no longer appropriate now that J.G. is an adult.  She testified case history and clinical judgment are less effective in predicting who will reoffend.  In his testimony and report, Dr. Lisota identified a number of dynamic risk factors he believes indicate a high risk of future sexually offensive behavior.  He also noted that because of J.G.’s diagnosed cognitive and personality disorders, as well as his failure to complete sex offender treatment, J.G. would likely have serious difficulty controlling his behavior.

[¶4] After reviewing both experts’ reports and hearing their testimony, the district court found the State established by clear and convincing evidence J.G. is likely to reoffend and has serious difficulty controlling his behavior.  The district court ordered him to remain committed as a sexually dangerous individual.

[¶5] J.G. argues the State did not prove by clear and convincing evidence that he remains a sexually dangerous individual under N.D.C.C. ch. 25-03.3.

[¶6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 25-03.3-02.  The appeal was timely under N.D.C.C. § 25-03.3-19.  We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 25-03.3-19.

II

[¶7] On appeal, J.G. argues the district court erred in finding the State proved by clear and convincing evidence that he engaged in sexually predatory conduct and that he is likely to reoffend.

[¶8] We review the civil commitment of a sexually dangerous individual under a modified clearly erroneous standard of review.  
Matter of Rubey
, 2012 ND 133, ¶ 8, 818 N.W.2d 731.  We will affirm a district court order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced the order is not supported by clear and convincing evidence.  
Id.

[¶9] At a discharge hearing, the State has the burden of proving by clear and convincing evidence the petitioner remains a sexually dangerous individual.  
Matter of Midgett
, 2010 ND 98, ¶ 7, 783 N.W.2d 27.  Under N.D.C.C. § 25-03.3-01(8), a sexually dangerous individual is:

[A]n individual who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

In addition, to satisfy the due process requirements of 
Kansas v. Crane
, 534 U.S. 407, 413 (2002), we have said, “Substantive due process requires proof that the individual facing commitment has serious difficulty controlling his behavior.”  
Matter of Rubey
, 2012 ND 133, ¶ 8, 818 N.W.2d 731 (quoting 
Matter of Rubey
, 2011 ND 165, ¶ 5, 801 N.W.2d 702).  “We have construed the definition of a sexually dangerous individual to require a nexus between the disorder and dangerousness, which distinguishes such an individual from other dangerous persons.”  
Matter of G.R.H.
, 2011 ND 21, ¶ 11, 793 N.W.2d 460.

 

A

[¶10] J.G. first argues the district court’s finding he engaged in sexually predatory conduct was not supported by clear and convincing evidence, because his index offense of indecent exposure did not constitute a “sexual act” or “sexual contact” under N.D.C.C. § 25-03.3-01(6) or (7).  He argues that under 
Interest of Maedche
, 2010 ND 171, ¶ 17, 788 N.W.2d 331, in which this Court noted indecent exposure “may not be a sexual act or sexual contact,” the State has not satisfied the requirement under N.D.C.C. § 25-03.3-01(8) that he be shown to have engaged in sexually predatory conduct.  His argument, however, is barred by res judicata.  In 
Laib v. Laib
, we said,

“Res judicata, or claim preclusion, prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies, and which were resolved by final judgment in a court of competent jurisdiction.  Under res judicata principles, it is inappropriate to rehash issues which were tried or could have been tried by the court in prior proceedings.”

2010 ND 62, ¶ 10, 780 N.W.2d 660 (quoting 
Wetch v. Wetch
, 539 N.W.2d 309, 311 (N.D. 1995)).

[¶11] J.G. did not argue his underlying conduct did not meet the statutory definition of “sexually predatory conduct” under N.D.C.C. § 25-03.3-01(8) in any of the six previous judicial proceedings regarding his commitment as a sexually dangerous individual; thus the issue of whether J.G. engaged in sexually predatory conduct was resolved by final order in 2002.  Whether an individual engaged in sexually predatory conduct is barred by res judicata from being relitigated on a petition for discharge.

 

B

[¶12] J.G. also argues the district court erred in finding he is likely to reoffend.  J.G. relies on Dr. Benson’s report and testimony in which she contends the actuarial risk assessment instruments are not appropriate because they are intended for juveniles.  Dr. Benson testified the use of clinical judgment is a less effective and problematic way to assess an individual’s risk of reoffense.  She testified an “inherent difficulty” exists when trying to prove the likelihood of reoffense in an adult male whose last sexual charge occurred when he was twelve years old.  Dr. Benson further testified that adolescents are by nature more impulsive and that developmental changes as one ages must be kept in mind when assessing an adult whose only offenses occurred when he was a child.

[¶13] Dr. Lisota testified, however, about a number of dynamic risk factors he found to be “problematic.”  Factors Dr. Lisota reported as problematic included significant social influences, hostility toward women, general social rejection and loneliness, lack of concern for others, impulsiveness, poor cognitive problem-solving, negative emotionality, sex drive and sexual preoccupation, sex as coping, deviant sexual preference, and cooperation with supervision.  He concluded in his report J.G. poses a high risk of sexually offensive behavior.  In her testimony, Dr. Benson agreed her examinations identify similar dynamic risk factors, though not labeled exactly the same, and her results of J.G.’s risk factors were “consistent” with Dr. Lisota’s.

[¶14] The district court found, in regard to J.G.’s likelihood of reoffense:

The Respondent’s behavior through the history of the case shows a likelihood of re-offense.  In recent history is the example of him propositioning a peer, and then being offending by the rejection and assertion of boundaries; which demonstrates his inability to understand the rights of others in addition to showing his inability to control his behavior by not following institutional rules.

To the other extreme, in his early history, there are the Respondent’s offenses against peers in the juvenile rehabilitative system.  Looking at this range shows a likelihood of re-offense.

The Court cannot accept Dr. Benson’s theory that the juvenile risk evaluation tools are no longer valid due to the passage of time.  The example of recent behavior shows the concern has not abated through the passage of time.

The Court also finds the failure of the Respondent to successfully complete treatment has relevance and is an important fact in the proof of the third prong.  This Court recognizes and understands the challenge the Respondent faces is even greater than normal due to his Cognitive Difficulties.  Nevertheless, the danger the Respondent presents remains paramount.

Dr. Lisota’s testimony identified multiple dynamic factors regarding the Respondent that are problematic for the present.  Those factors are identified at pages 7-8 of Dr. Lisota’s written report.  All of those factors are relevant to the proof of the likelihood of re-offense.  Of particular concern are the factors Sexual preoccupation, and deviant sexual preference.  The Court finds these factors not just prove the likelihood of re-offense but significantly increase the danger presented by this Respondent.

[¶15] A review of the district court order shows the court based its decision to deny J.G.’s petition for discharge on specific findings after it found Dr. Lisota’s testimony more credible. “The district court is the best credibility evaluator in cases of conflicting testimony, and we will not second-guess the district court’s credibility determinations.”  
Matter of Hanenberg
, 2010 ND 8, ¶ 9, 777 N.W.2d 62.  Because it is established in experts’ reports and testimony in the record, the district court’s finding that J.G. is likely to reoffend is not clearly erroneous.

[¶16] We conclude from our review of the record, the district court’s order denying J.G.’s petition for discharge from commitment is not based on an erroneous view of the law and is supported by clear and convincing evidence J.G. remains a sexually dangerous individual under N.D.C.C. ch. 25-03.3.  We therefore conclude the district court did not clearly err in denying J.G.’s petition.

III

[¶17] We affirm the district court order.

[¶18] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.