2013 ND 171

**In the Interest of Matthew GRAHAM**

**Eric Hetland, State's Attorney, Petitioner and Appellee**

v.

**Matthew Graham, Respondent and Appellant.**

No. 20130090.

Supreme Court of North Dakota.

Sept. 25, 2013.

Eric Bruce Hetland, Kidder County State's Attorney, Steele, ND, for petitioner and appellee.

Justin Jacob Vinje, Bismarck, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1] Matthew Graham appeals from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. We reverse and remand, concluding the district court erred in extending res judicata to the question whether a committed individual has a congenital or acquired condition manifested by a sexual disorder, personality disorder or other mental disorder or dysfunction.

I

[¶ 2] Graham was adjudicated a delinquent child on April 20, 2004 based on an August 27, 2002 incident in which he french-kissed and exposed his penis to a five-year-old. Graham was fourteen at the time. The number of sexual offenses he committed remains unclear, but during his psychological evaluations, he acknowledged offenses against six minors. Graham spent several years in programs for minor sex offenders before being committed on October 17, 2007 to the North Dakota State Hospital as a sexually dangerous individual.

[¶ 3] Graham petitioned for discharge in late 2008 and received an order for continued commitment on December 9, 2009. Graham's 2010 discharge petition was denied on July 27, 2011. Most recently, Graham petitioned for discharge in August 2012, which was denied on March 7, 2013.

[¶ 4] During Graham's 2011 annual review hearing, Robert Lisota, Ph.D., a State Hospital psychologist, and James Gilbertson, Ph.D., an independent psychologist, filed reports and testified. The experts agreed Graham engaged in sexually predatory conduct but disagreed to whether Graham has a congenital or acquired condition manifested by a sexual disorder, a personality disorder or other mental disorder or dysfunction, and to whether he has difficulty controlling his behavior and is likely to engage in further acts of sexually predatory conduct.

[¶ 5] Dr. Lisota found Graham suffered from pedophilia and personality disorder. Dr. Gilbertson challenged those diagnoses as "too soft." He found Graham did not suffer from an underlying mental condition that would cause him to be unable to control his sexual impulses in a way that he likely will reoffend. After considering both Dr. Lisota's and Dr. Gilbertson's opinions, the district court found that Graham suffered from a congenital or acquired condition manifested by a personality, sexual or mental disorder, that he is likely to reoffend and that he has difficulty controlling his behavior.

[¶ 6] During Graham's 2013 annual review hearing, Dr. Gilbertson again filed a report and testified. Like in 2011, Dr. Gilbertson disagreed to whether Graham has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder or other mental disorder or dysfunction, and to whether he has difficulty controlling his behavior and is likely to engage in further acts of sexually predatory conduct.

[¶ 7] In 2013, Dr. Gilbertson specifically challenged Graham's original diagnoses of pedophilia and personality disorder. The district court cut short Dr. Gilbertson's testimony regarding the second element because he presented no new evidence anything had changed affecting Graham's diagnoses. The district court found that absent new facts, Graham's diagnoses were res judicata because they were the subject of three unappealed district court orders. It cited *In re J.G.* to

extend res judicata to the second element of the sexually dangerous individual four-step analysis. 2013 ND 26, 827 N.W.2d 341 (finding that whether J.G. engaged in sexually predatory conduct was res judicata and not subject to challenge). The district court concluded Graham remained a sexually dangerous individual because nothing changed since the last adjudication and because Graham's own expert admitted that if the first three factors were met, those factors establish he has serious difficulty controlling his behavior and is likely to reoffend.

II

[¶ 8] Graham argues the district court erred in extending res judicata to the second element of the sexually dangerous individual analysis and N.D.C.C. § 25–03.3–18(4) requires the state to prove at every hearing a committed individual has a congenital or acquired condition that is manifested by a sexual disorder, personality disorder or other mental disorder or dysfunction.

[¶ 9] "We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review." *Interest of G.L.D.*, 2011 ND 52, ¶ 5, 795 N.W.2d 346. "We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." *Id.*

[¶ 10] At a commitment proceeding, the State must prove by clear and convincing evidence that the person is a sexually dangerous individual. N.D.C.C. § 25–03.3–13. When a committed individual petitions for discharge, the State must prove by clear and convincing evidence the individual remains a sexually dangerous individual. N.D.C.C. § 25–03.3–18(4). The State must prove three statutory elements

and establish an additional constitutional requirement to satisfy substantive due process requirements. *In re Vantreece,* 2009 ND 152, ¶ 6, 771 N.W.2d 585.

[¶ 11] The statutory elements are:

"an individual [1] who is shown to have engaged in sexually predatory conduct and [2] who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction [3] that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

N.D.C.C. § 25–03.3–01(8). To comport with the language of the statute and constitutional substantive due process concerns, this Court:

"construe[s] the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case."

*Matter of G.R.H.,* 2006 ND 56, ¶ 18, 711 N.W.2d 587. The fourth step is a constitutionally required inquiry whether the individual has difficulty controlling his behavior. *In re E.W.F.,* 2008 ND 130, ¶ 10, 751 N.W.2d 686.

[¶ 12] Graham correctly points out that N.D.C.C. § 25–03.3–18(4) places the burden of proof on the State to show the committed person remains a sexually dangerous individual. Element one is proven by a prior adjudication that respondent engaged in sexually predatory con-

duct. *In re J.G.*, 2013 ND 26, ¶ 10, 827 N.W.2d 341. Res judicata prevents relitigation of that inquiry. *See id.* Here, the question of whether Graham engaged in sexually predatory conduct was addressed in three prior sexually dangerous individual commitment proceedings, which were not appealed. The issue of whether Graham engaged in sexually predatory conduct therefore has been conclusively resolved by final court order.

[¶ 13] Graham invites us to revisit our holding in *J.G.*, by arguing the State must prove each of the four elements by clear and convincing evidence. Graham argues that the State must start anew by reproving each element at each annual review hearing. We reject Graham's argument because an inherent difference exists between the first element and the last three elements. The question whether the person engaged in sexually predatory conduct is uniquely backward-looking. Historical index offenses are static and do not change, which is why element one is an appropriate application of res judicata. Additionally, should N.D.C.C. § 25–03.3–18(4) be read to require perpetual proof of element one, the State's burden would become difficult to impossible with the passage of time as memories fade, witnesses die or become unavailable and evidence is lost or destroyed. *See, e.g., Anderson v. Shook*, 333 N.W.2d 708, 712 (N.D.1983) (discussing the difficulties in defending a stale claim with the passage of time and describing the statute of limitations as a product of necessity).

[¶ 14] The final three elements focus on the present or future and ask whether the person has a congenital or acquired condition manifested by a sexual disorder, a personality disorder or other mental disorder or dysfunction, whether the individual is likely to engage in further acts of sexually predatory conduct and whether the individual has difficulty controlling his or her behavior. These elements inquire whether a person may change with the passage of time and adherence to treatment. *See* N.D.C.C. §§ 25–03.3–17, 25–03.3–18 (discussing the committed individual's right to have their mental condition evaluated at least once a year, the individual's right to petition for discharge annually and that the individual will remain committed *until* he or she is determined to be safe); *see also In re M.D.*, 1999 ND 160, ¶ 28, 598 N.W.2d 799 (holding the burden of proving respondent is a sexually dangerous individual remains with the state and does not shift to the committed individual).

[¶ 15] The district court received Dr. Gilbertson's written evaluation but refused to consider his testimony regarding whether Graham has a relevant congenital or acquired condition because he offered similar conclusions during the 2011 proceeding. Although Dr. Gilbertson was presenting his previously expressed disagreement with Graham's original diagnoses, that fact does not change the potential effect his expert opinion may have had on Graham's diagnoses in 2013. Dr. Gilbertson's testimony should not have been excluded on res judicata grounds.

[¶ 16] By our holding we do not suspend application of the rules of evidence. The district court remains able to control the admission of evidence. *See State v. Doppler*, 2013 ND 54, ¶ 7, 828 N.W.2d 502 ("The district court exercises broad discretion in determining whether to admit or exclude evidence, and its determination will be reversed on appeal only for an abuse of discretion.") (quoting *State v. Chisholm*, 2012 ND 147, ¶ 10, 818 N.W.2d 707). However, here the district court did not merely regulate the admission of evidence. It held, "The respondent's diagnoses have been the subject of three previ-

ous district court orders and have not been appealed. Absent some new facts, the diagnoses are res judicata."

### III

[¶ 17] We conclude the district court excluded Dr. Gilbertson's testimony on element two based on an erroneous view of the law. We reverse the order and remand for further proceedings consistent with this decision.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ. concur.