2013 ND 190

**In the Matter of Larry Gene RUBEY.**

**Ladd R. Erickson, State's Attorney, Petitioner and Appellee**

v.

**Larry Gene Rubey, Respondent and Appellant.**

No. 20130093.

Supreme Court of North Dakota.

Oct. 22, 2013.

Ladd Ronald Erickson, State's Attorney, Washburn, ND, for petitioner and appellee.

Gregory Ian Runge, Bismarck, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1]   Larry Gene Rubey appeals from a district court order limiting the presentation of evidence at his discharge hearing and from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. Rubey argues the district court erred in restricting the evidence and finding he remained a sexually dangerous individual. We affirm the district court's order that Rubey remained a sexually dangerous individual and deny Rubey's requested relief on the evidentiary limitation.

I

[¶ 2]   Rubey was convicted of gross sexual imposition in 1988.  In 1999, he was convicted of gross sexual imposition and two counts of corruption or solicitation of a minor.  Rubey received a twelve-year prison sentence, which this Court affirmed. *State v. Rubey*, 2000 ND 119, 611 N.W.2d

888. The State petitioned to commit Rubey as a sexually dangerous individual prior to Rubey's release. Rubey was committed as a sexually dangerous individual in August 2010, and this Court affirmed. *In re Rubey*, 2011 ND 165, 801 N.W.2d 702. Rubey petitioned for discharge in June 2011. The district court found in October 2011 he remained a sexually dangerous individual and denied his petition for discharge. This Court affirmed that decision. *In re Rubey*, 2012 ND 133, 818 N.W.2d 731.

[¶ 3] Rubey petitioned for discharge on September 24, 2012. The State moved to limit the scope of the annual review. The district court granted the State's motion in limine, limiting the scope of the hearing to whether Rubey remains a sexually dangerous individual and allowing additional evidence if it shows something changed since the last annual review.

[¶ 4] Rubey's discharge hearing occurred on February 15, 2013. The State's expert, Dr. Lynne Sullivan, and Rubey's independent evaluator, Dr. Stacey Benson, agreed Rubey engaged in sexually predatory conduct and has a congenital or acquired condition manifested by a sexual disorder, personality disorder or other mental disorder or dysfunction. The two experts disagreed whether Rubey was likely to engage in further acts of sexually predatory conduct and whether he has serious difficulty in controlling his behavior.

[¶ 5] Dr. Sullivan recognized the average risk of reoffending decreases at age sixty, but emphasized the statistic is an average, which she believed did not include Rubey. Dr. Sullivan testified Rubey was still in the first phase of a four-phase treatment program, the same phase he was in during his previous adjudication. Dr. Sullivan concluded that Rubey posed a high risk of sexually offensive behavior in the short term and that he would have serious difficulty controlling his behavior. Dr. Benson believed Rubey was unlikely to reoffend because his risk assessment dropped from high to moderate, he turned age sixty, his multiple sclerosis decreased sexual functioning, he showed empathy toward others in treatment and he did not act out sexually since his previous hearing. The district court found Dr. Sullivan's opinion more convincing than Dr. Benson's and concluded Rubey remained a sexually dangerous individual. Rubey's discharge petition was denied.

II

A

[¶ 6] Rubey argues the district court erred in imposing an evidentiary limitation. He asserts the district court erred in finding he remains a sexually dangerous individual because he is not likely to engage in further acts of predatory conduct and does not have difficulty controlling his behavior.

[¶ 7] "[This Court] review[s] a district court's decision on a motion in limine for an abuse of discretion." *State v. Lutz*, 2012 ND 156, ¶ 3, 820 N.W.2d 111 (quotation omitted). "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner or if it misinterprets or misapplies the law." *Id.* "However, the exclusion of evidence by a motion in limine does not dispense with the need for the proponent of evidence to make an offer of proof so the trial court can consider the proffered evidence in the context of other evidence presented during trial." *Williston Farm Equip., Inc. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 550 (N.D.1993). The party challenging the exclusion of evidence must offer proof demonstrating prejudice from the restriction. *Perius v. Nodak Mut. Ins. Co.*, 2012 ND 54, ¶ 6, 813 N.W.2d 580.

These showings create the required record for appellate review. *Gorsuch v. Gorsuch,* 392 N.W.2d 392, 394 (N.D.1986). This Court is unable to review the issue absent such an offer of proof. *Id.*

[¶ 8] "We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review." *Interest of G.L.D.,* 2011 ND 52, ¶ 5, 795 N.W.2d 346. "We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." *Id.* "[W]e give great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *Id.*

[¶ 9] At a commitment proceeding, the State must prove by clear and convincing evidence the person is a sexually dangerous individual. N.D.C.C. § 25–03.3–13. When a committed individual petitions for discharge, the State must prove by clear and convincing evidence three statutory elements and establish an additional constitutional requirement to satisfy substantive due process requirements. N.D.C.C. § 25–03.3–18(4); *In re Vantreece,* 2009 ND 152, ¶ 6, 771 N.W.2d 585.

[¶ 10] The statutory elements are: "an individual [1] who is shown to have engaged in sexually predatory conduct and [2] who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction [3] that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

N.D.C.C. § 25–03.3–01(8). To comport with the language of the statute and con-

stitutional substantive due process concerns, this Court:

"construe[s] the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case."

*Matter of G.R.H.,* 2006 ND 56, ¶ 18, 711 N.W.2d 587. The fourth step is a constitutionally required inquiry whether the individual has difficulty controlling his behavior. *In re E.W.F.,* 2008 ND 130, ¶ 10, 751 N.W.2d 686.

B

[¶ 11] Rubey argues the district court erred in restricting the presentation of evidence to the third and fourth elements of the sexually dangerous individual analysis. He concedes the first element is res judicata. *In the Matter of J.G.,* 2013 ND 26, ¶ 11, 827 N.W.2d 341. Rubey contends the district court should not have precluded him from presenting evidence on the second element. The State contends that the first two prongs of the sexually dangerous individual analysis are res judicata because they were established in a previous hearing and that the parties should limit their presentation of evidence to the third and fourth elements.

[¶ 12] Before this Court can determine whether the limitation was an abuse of discretion, the proponent of excluded evidence must make an offer of proof to the trial court and show prejudice from the restriction. N.D.R.Ev. 103(a)(2); *Perius,* 2012 ND 54, ¶ 6, 813 N.W.2d 580. Rubey's expert's testimony was limited on several occasions, and each time Rubey

failed to make an offer of proof. Nor did Rubey present evidence in either instance showing why the testimonial issues should be determined differently. *Gorsuch*, 392 N.W.2d at 394. As to presenting evidence on element two, Rubey recognized during the motion in limine hearing that Dr. Benson's report does not touch on the first or second element. In his brief to this Court, he conceded Drs. Sullivan and Benson agree Rubey meets element two. Without an offer of proof and in light of Dr. Benson's report being silent on the element, this Court is unable to determine whether the district court abused its discretion in limiting the evidence.

## III

[¶ 13] Rubey claims the district court erred in finding he remains a sexually dangerous individual, arguing he is not likely to engage in further acts of predatory conduct and does not have difficulty controlling his behavior. Rubey concedes he was convicted of a crime involving sexually predatory conduct and relitigation is barred by res judicata. *J.G.*, 2013 ND 26, ¶ 11, 827 N.W.2d 341. Rubey also concedes he has an acquired personality disorder for the purposes of his appeal from the district court's determination that he remains a sexually dangerous individual.

[¶ 14] The experts disagree whether Rubey is likely to engage in further acts of predatory conduct under element three. Dr. Sullivan asserts the mitigating effect of Rubey turning sixty is not applicable. Dr. Sullivan also believes Rubey has not acquired sufficient skills such that he will be able to refrain from committing further acts of predatory conduct. Dr. Benson emphasizes that Rubey turning sixty has a mitigating effect on his risk, that he displays positive characteristics like empathy and restraint in sexually acting out and

that his difficulties with multiple sclerosis will prevent him from reoffending.

[¶ 15] The experts disagree whether Rubey has difficulty controlling his behavior under the fourth element. Dr. Sullivan believes Rubey has difficulty controlling his behavior because his treatment group reports he engages in staff-bashing and they challenge his behavior toward female individuals. Dr. Benson opined Rubey does not have difficulty controlling his behavior because he did not physically or sexually act out in the past year.

[¶ 16] "We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." *G.L.D.*, 2011 ND 52, ¶ 5, 795 N.W.2d 346. We give great deference to credibility determinations of expert witnesses and to the weight of their testimony. *Id.* The district court's preference for Dr. Sullivan's opinions regarding Rubey's risk factors is not an erroneous view of the law, and we are not firmly convinced it is not supported by clear and convincing evidence. The district court's finding was not clearly erroneous.

## IV

[¶ 17] Without evidence on element two or at least an offer of proof about what evidence would have been offered, we are unable to determine whether the district court abused its discretion in limiting the evidence. We conclude the district court did not err in finding that Rubey remained a sexually dangerous individual. We affirm the district court's order that Rubey remained a sexually dangerous individual and deny Rubey's requested relief on the evidentiary limitation.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 19]   I respectfully dissent largely for the reasons set forth in my dissent in *Matter of Rubey*, 2012 ND 133, 818 N.W.2d 731.

[¶ 20]   The evidence that Rubey remains a sexually dangerous individual has not gotten any more convincing in the year that he has been deprived of his freedom since the last review of his commitment.

[¶ 21]   I quote *only* from the testimony given by the expert, Dr. Lynn Sullivan, whose testimony was offered in support of Rubey's continuing commitment.  His situation and behavior remain the same as it did at the last hearing:

Q.   Okay. Has there been some other— outside of the treatment, his ward behavior, his living condition behavior, things like that, any other incidents that have changed from where we previously adjudicated him to where we are today?

A.   Nothing notable.

Q.   Okay. He's basically been the same?

A.   Yes, same environment, same situation.

[¶ 22]   Dr. Sullivan's opinion, based upon actuarial assessment, would not support commitment:

Based solely on the actual risk results it is my professional opinion that Mr. Rubey's actuarial assessed static baseline risk of sexual recidivism may not meet the criteria of likely to engage in further acts of sexually predatory conduct as defined in N.D.C.C. 25–03.1.

[¶ 23]   Rubey is not a psychopath:

Q.   BY MR. RUNGE: Dr. Sullivan, if I can find it here, your assessment using the PCL–R checklist, the Psychopathy Checklist, what does the manual say for the cut off?

A.   30 out of 40.

Q.   And you scored him what?

A.   23.

Q.   So that means he's not psychopath?

A.   That's right.

[¶ 24]   Her opinion is based solely upon failure to progress in treatment;  yet, Dr. Sullivan can point to nothing that indicates Rubey is a danger:

Q.   BY MR. RUNGE:  On Page 10 then of your evaluation, you state that you see hostility towards women. You note this is "... possibly present because he has problems interacting appropriately with female staff ..." Can you give me examples where he has openly been hostile with female staff?

A.   Not that he's necessarily been hostile per se.

Q.   How about threatening?

A.   I don't believe that he's been specifically threatening.

Q.   How about violent?

A.   No.

Q.   Aggressive?

A.   Not to my knowledge.

Q.   You also note that his sex drive is problematic?

A.   Yes.

Q.   What evidence do you have that his sex drive is problematic?

A.   This item is based somewhat on historical behaviors of which Mr. Rubey has multiple sexual partners including victims.   Mr. Rubey has had problems, his group—

Q.   Well, hang on a minute.  Now, I've been chastised by the Court, your Honor, for having to go back.  She's going back to historical data.  I want to know what current evidence do you have that his sex drive is problematic?

A. He has had problems, his group has challenged him during this year on staring at and interacting inappropriately with female staff. They surmise that he is attracted to them.

Q. Was this threatening behavior?

A. No.

Q. Was it violent behavior?

A. No.

Q. It wasn't aggressive behavior?

A. No.

Q. You note then his negative emotionality is possibly present and notes some degree of animosity towards staff?

A. Yes.

Q. Has he been aggressive towards staff?

A. No.

Q. What animosity has he shown?

A. He's been—let me refer to my notes. He engaged in what we call staff bashing, which is negative.

Q. I can't hear you.

A. He engaged in what we call staff bashing.

Q. Staff bashing?

A. Yes.

Q. Was that staff bad mouthing?

A. Yes.

Q. My terminology. And what was the content of that staff bashing?

A. I don't have details. The note just says that he was told that he causes drama on the unit by bashing staff.

Q. Now, you note on Page 11 that based on his current age and combination of his health this may lower his risk to reoffend; is that correct?

A. Yes.

[¶ 25] Asked to give specifics of any instances that indicated an inability to control his behavior, bad mouthing the staff, without any details, was all that Dr. Sullivan could provide:

Q. So all in all in discussing the serious difficulty, you note that he has not had a significant behavioral problem or he's not been a behavioral problematic person on the ward; correct?

A. Correct.

Q. And do you still think though he has serious difficulty controlling his behavior?

A. Yes.

[¶ 26] The record lacks any evidence, much less clear and convincing evidence, that Rubey satisfies the criteria for continuing commitment.

[¶ 27] CAROL RONNING KAPSNER