Jensen, Justice.
 

 [¶1] Raymond Voisine appeals from an order denying his petition for discharge from treatment as a sexually dangerous individual. We conclude clear and convincing evidence supports the district court's findings and order and the court did not misapply the doctrine of res judicata. We affirm.
 

 I
 

 [¶2] In 2004, Voisine was incarcerated after he pled guilty to gross sexual imposition for acts involving a six-year-old victim. In
 
 Matter of Voisine
 
 ,
 
 2010 ND 17
 
 , ¶¶ 2-4,
 
 777 N.W.2d 908
 
 , this Court discussed the underlying facts leading to his incarceration and subsequent commitment as a sexually dangerous individual:
 

 Voisine [was, at that time,] a 65-year-old male with four adult children, R.V., P.P., H.M. and L.K. In 2003, an officer with the North Dakota Bureau of Criminal Investigation executed a search warrant on Voisine's home for an unrelated firearms charge. During the search, the officer found sexually explicit photographs under the pillow on Voisine's bed. The photographs pictured H.M., one of Voisine's three adult daughters. DNA analysis was performed and established with over 99.99 percent certainty that Voisine fathered two children with H.M.
 

 In light of Voisine's incestuous relations, interviews were conducted with his acquaintances. Voisine's grandson reported that when he was 6 or 7 years old, he was forced to stroke Voisine's penis for 5 to 10 minutes. The ex-husband of H.M. reported that Voisine threatened him with a firearm and fathered a child with P.P., Voisine's adult daughter. Voisine's ex-wife reported that Voisine beat and threatened her while they were married. The current boyfriend of Voisine's ex-wife reported that Voisine's children were sexually abused when they were minors. Voisine's daughter, L.K., reported that she was born to a 17-year-old mother who was impregnated by a 34-year-old Voisine. L.K. also reported that Voisine physically abused her when she was young and that she once walked in on Voisine unzipping his pants behind a naked and bent-over H.M. L.K. later denied stating H.M. was naked.
 

 Following the investigation, Voisine was charged with gross sexual imposition for sexual contact with his 6- or 7-year-old grandson and with promoting obscenity to a minor for allegedly showing pornography to a second, 9- or 10-year-old grandson who was also Voisine's son. Voisine pled guilty to gross sexual imposition, and the promotion of obscenity charge was dismissed. He was incarcerated, and upon his release in 2008, the State petitioned to commit him as a sexually dangerous individual. The State alleged that in addition to the sexual contact underlying Voisine's gross sexual imposition conviction, that Voisine sired three children with two of his daughters, that Voisine sexually abused his daughters as minors, that Voisine conceived a child with a 16-year-old girl in Maine and that Voisine promoted obscenity to a minor by showing pornography to his 9- or 10-year-old grandson/son.
 

 [¶3] After he was released from custody, the district court revoked his probation for failing to complete sex offender treatment while incarcerated. In a post-conviction
 proceeding, his probation revocation was reversed.
 
 Voisine v. State
 
 ,
 
 2008 ND 91
 
 , ¶ 17,
 
 748 N.W.2d 429
 
 . The State petitioned to commit Voisine for treatment as a sexually dangerous individual, which the district court subsequently granted. This Court reversed and remanded the case for further proceedings in
 
 Voisine
 
 ,
 
 2010 ND 17
 
 , ¶ 15,
 
 777 N.W.2d 908
 
 , and after further proceedings summarily affirmed an order committing Voisine for treatment.
 
 Interest of Voisine
 
 ,
 
 2010 ND 241
 
 , ¶ 1,
 
 795 N.W.2d 38
 
 . The district court denied his subsequent petitions for discharge from commitment, which were affirmed on appeal.
 
 See
 

 Interest of Voisine
 
 ,
 
 2012 ND 250
 
 , ¶ 1,
 
 823 N.W.2d 786
 
 ;
 
 Interest of Voisine
 
 ,
 
 2014 ND 178
 
 , ¶ 2,
 
 859 N.W.2d 930
 
 ;
 
 Interest of Voisine
 
 ,
 
 2016 ND 254
 
 , ¶ 24,
 
 888 N.W.2d 781
 
 . This Court also summarily affirmed a district court order denying another petition for post-conviction relief from the conviction.
 
 Voisine v. State
 
 ,
 
 2014 ND 98
 
 , ¶ 2,
 
 859 N.W.2d 930
 
 .
 

 [¶4] In December 2016, Voisine again petitioned the district court for discharge. The court held the review hearing on November 30, 2017, during which the State's expert, Dr. Peter Byrne, and Voisine's independent evaluator, Dr. Stacey Benson, testified. Both experts also submitted to the court their respective reports evaluating Voisine. The court subsequently entered an order finding clear and convincing evidence that Voisine continues to meet the statutory criteria and is in need of treatment and rehabilitation as a sexually dangerous individual. The court ordered that he continue to be civilly committed for treatment.
 

 II
 

 [¶5] This Court reviews civil commitments of sexually dangerous individuals under a "modified clearly erroneous" standard of review.
 
 Interest of Tanner
 
 ,
 
 2017 ND 153
 
 , ¶ 4,
 
 897 N.W.2d 901
 
 . We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence.
 

 Id.
 

 ;
 
 Matter of Wolff
 
 ,
 
 2011 ND 76
 
 , ¶ 5,
 
 796 N.W.2d 644
 
 . We accord "great deference to the [district] court's credibility determinations of expert witnesses and the weight to be given their testimony."
 
 Tanner
 
 , at ¶ 4 ;
 
 Wolff
 
 , at ¶ 5.
 

 [¶6] At a discharge hearing, the State must prove by clear and convincing evidence that the committed individual remains a "sexually dangerous individual" under N.D.C.C. § 25-03.3-18(4).
 
 Matter of Hehn
 
 ,
 
 2015 ND 218
 
 , ¶ 5,
 
 868 N.W.2d 551
 
 . Under N.D.C.C. § 25-03.3-01(8), the State must prove three elements:
 

 (1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct.
 

 Tanner
 
 ,
 
 2017 ND 153
 
 , ¶ 4,
 
 897 N.W.2d 901
 
 . Further, "the United States Supreme Court held that in order to satisfy substantive due process requirements, the individual must be shown to have serious difficulty controlling his behavior."
 
 Matter of Hehn
 
 ,
 
 2008 ND 36
 
 , ¶ 19,
 
 745 N.W.2d 631
 
 (citing
 
 Kansas v. Crane
 
 ,
 
 534 U.S. 407
 
 , 413,
 
 122 S.Ct. 867
 
 ,
 
 151 L.Ed.2d 856
 
 (2002) ). We therefore construe "sexually dangerous individual" as meaning "proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from
 the dangerous but typical recidivist in the ordinary criminal case."
 
 Wolff
 
 ,
 
 2011 ND 76
 
 , ¶ 7,
 
 796 N.W.2d 644
 
 (quoting
 
 Interest of J.M.
 
 ,
 
 2006 ND 96
 
 , ¶ 10,
 
 713 N.W.2d 518
 
 ).
 

 III
 

 [¶7] Voisine contends the district court's findings and order for continued treatment were not supported by clear and convincing evidence. While he concedes the first prong that he engaged in sexually predatory conduct, he challenges the court's findings on the remaining elements that he has a sexual disorder, personality disorder, or other mental disorder or dysfunction; that he has a high risk of re-offending; and that he has serious difficulty in controlling his behavior. He also contends the court improperly applied the doctrine of res judicata by suggesting it had no authority to override previous court decisions as to the existence of a sexual or mental disorder.
 

 [¶8] Regarding the second prong, Voisine argues that the district court failed to provide a "detailed analysis" to explain the court's finding that his prior diagnoses of paraphilia, not otherwise specified, was more credible than Dr. Benson's diagnosis of dysthymia, which she explained as depression. At the hearing the State called Dr. Byrne, who testified that he concurred with Voisine's prior diagnosis of unspecified paraphilic disorder after reviewing the prior evaluations and his offense history, personally meeting with Voisine, and completing his own SDI re-evaluation report. Dr. Byrne testified that there had been no change in that diagnosis and that Voisine displays antisocial features, not rising to the level of a diagnosis. While Dr. Benson disputes the diagnosis, she agrees he displays antisocial features.
 

 [¶9] Voisine contends the district court erred in concluding he has a sexual disorder because the State failed to provide clear and convincing evidence of a sexual disorder. He essentially challenges the weight and credibility of Dr. Byrne's testimony and reliance on prior expert opinions, contending Dr. Benson's diagnosis is correct. Moreover, he argues the court committed reversible error by "blindly" accepting Dr. Byrne's diagnosis without conducting a rigorous examination and analysis of the existence of a sexual or mental disorder. Voisine suggests the court unduly relied on the findings of previous courts and did not make its own decision on the evidence presented in these proceedings. He contends the court applied res judicata for its finding on the second prong and in its refusal to consider Dr. Benson's testimony.
 

 [¶10] In
 
 Interest of Graham
 
 ,
 
 2013 ND 171
 
 , ¶ 14,
 
 837 N.W.2d 382
 
 , we explained that, unlike the first prong, the final three elements for determining a sexually dangerous individual focus on the present or future and "inquire whether a person may change with the passage of time and adherence to treatment." The district court in
 
 Graham
 
 refused to consider an independent psychologist's testimony regarding whether the petitioner had a relevant congenital or acquired condition, which the psychologist had previously offered similar conclusions during a prior proceeding and expressed disagreement with the original diagnoses.
 
 Id.
 
 at ¶ 15. We concluded the court erred in finding the respondent's diagnoses were res judicata "[a]bsent some new facts."
 
 Id.
 
 at ¶ 16. Voisine contends the district court did the same thing here, purportedly demonstrated during the hearing by the court's colloquy with Voisine's attorney:
 

 THE COURT: Mr. Morrow, hasn't [Dr. Benson] testified to that [diagnosis] previously and haven't previous judges decided that the other opinions were
 more valid, for whatever reason or another?
 

 MR. MORROW: Correct.
 

 THE COURT: I mean you're basically [asking] me to overrule at least two or three previous judges, aren't you?
 

 MR. MORROW: Well, no. The Court can look at it differently.
 

 THE COURT: Well why would I look at it differently than the other judges already have? I mean, with all due respect to Doctor Benson, and I've heard her testify before and I've also made rulings that adopted her findings, so it's not like I'm just discounting it out-of-hand. But my point is is [sic] that, and I'm not saying that you're judge shopping, but you asked for a different judge and I assume in the hopes that I would decide something differently than the other judges have. Why would I do that?
 

 MR. MORROW: Well-
 

 THE COURT: Let's move on.
 

 MR. MORROW: Okay. Thank you.
 

 [¶11] A district court's oral findings may be considered on appeal to clarify its written findings if the oral findings do not conflict with the written findings.
 
 See
 

 Holtz v. Holtz
 
 ,
 
 1999 ND 105
 
 , ¶ 28,
 
 595 N.W.2d 1
 
 (citing
 
 Fenske v. Fenske
 
 ,
 
 542 N.W.2d 98
 
 , 102 (N.D. 1996) ). However, the district court's "written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling."
 
 Fenske
 
 , at 102 (quoting
 
 Fed. Land Bank of St. Paul v. Lillehaugen
 
 ,
 
 404 N.W.2d 452
 
 , 454 (N.D. 1987) ). To the extent Voisine suggests on appeal the district court's comment during the hearing establishes the court applied res judicata and completely disregarded Dr. Benson's testimony and report, the court's specific written findings and conclusions control. In its findings and order, the court clearly considered both Dr. Byrne's and Dr. Benson's opinions and discussed its specific reasons for finding Dr. Byrne's opinion more credible and persuasive, in light of the previous experts that had evaluated Voisine. We conclude the court did not apply the doctrine of res judicata in this case.
 

 [¶12] Here, the district court concluded the State had met its burden of proving Voisine has a sexual disorder, a personality disorder, or mental disorder or dysfunction. In its findings and order, although the experts' testimony differed on his disorder, the court specifically found Dr. Byrne's testimony more credible than Dr. Benson's testimony that Voisine's diagnosis is unspecified paraphilia disorder. We have said that "[u]nder the second prong of the commitment analysis, all conduct of a sexually predatory nature can be used to determine if an individual has a congenital or acquired condition manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction."
 
 Voisine
 
 ,
 
 2010 ND 17
 
 , ¶ 13,
 
 777 N.W.2d 908
 
 .
 

 [¶13] While the district court acknowledged Voisine's prior diagnoses when the court found Dr. Byrne's opinion more persuasive because it is consistent with the opinions of four other expert witnesses, the court did not refuse to consider Dr. Benson's conflicting testimony. The court found, however, that Dr. Benson's opinion is consistent only with her own opinion. On our review of the record, we conclude the court's finding is sufficient for us to understand its decision and clear and convincing evidence supports the court's finding on the second prong.
 

 [¶14] Regarding the third prong, Voisine argues the district court erred in relying on Dr. Byrne's "erroneous and faulty analysis" of his high risk of re-offending. Voisine again asserts Dr. Benson disagreed with Dr. Byrne's opinion and maintains he does not continue to
 meet the criteria based on his current behavior. Although both experts appear to agree that Voisine had a low score on the Static-99 test that would not by itself support a finding of continued risk, Voisine challenges Dr. Byrne's opinion that his score actually under-represented his true risk and his use of the VRS-SO (Violence Risk Scale for Sex Offenders) test, which looks at dynamic and static risk factors and which Dr. Byrne opined in addition to other factors showed he had a high risk of engaging in further acts of sexually predatory conduct.
 

 [¶15] "Under the third prong of the commitment analysis, evaluating psychologists can 'use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to society.' "
 
 Voisine
 
 ,
 
 2010 ND 17
 
 , ¶ 14,
 
 777 N.W.2d 908
 
 (quoting
 
 Interest of M.B.K.
 
 ,
 
 2002 ND 25
 
 , ¶ 18,
 
 639 N.W.2d 473
 
 ). "This standard applies equally to experts and courts alike, and its inclusive nature leads us to conclude that all relevant conduct should be considered under this prong of the analysis."
 
 Voisine
 
 , at ¶ 14. Here, the district court found that, in addition to previous instruments used to predict the likelihood of re-offending, Dr. Byrne also had used a new test,
 
 i.e.
 
 , the VRS-SO, and a version of the STABLE instrument that looked at the respondent's behavior at the hospital. The court found Dr. Byrne saw no or "extremely minimal" treatment progress and had noted Voisine attended meetings but did not participate, fell asleep in some meetings, did not contribute at meetings, and turned in no homework.
 

 [¶16] The district court found that Dr. Benson's analysis was not as comprehensive as Dr. Byrne's and that Dr. Benson's opinions on the likelihood of re-offending are affected by her belief Voisine has been mis-diagnosed by at least four other experts. "Claims that a district court improperly relied on the opinion of one expert instead of another challenge the weight the evidence was assigned, not the sufficiency of the evidence."
 
 Matter of J.T.N.
 
 ,
 
 2011 ND 231
 
 , ¶ 8,
 
 807 N.W.2d 570
 
 . "[A] choice between two permissible views of the weight of the evidence is not clearly erroneous."
 
 Wolff
 
 ,
 
 2011 ND 76
 
 , ¶ 14,
 
 796 N.W.2d 644
 
 . We conclude clear and convincing evidence supports the district court's finding and the court did not err in deciding that Voisine is an individual who is likely to re-offend.
 

 [¶17] Regarding whether he has serious difficulty in controlling his behavior, Voisine relies on Dr. Benson's opinion that Voisine would not experience serious difficulty controlling his behavior outside of the State Hospital. Dr. Byrne, however, opined that Voisine would have serious difficulty controlling his behavior if released into a less-restrictive environment. The district court again found the State had met its burden of proving Voisine has serious difficulty in controlling his behavior. The court found Voisine has not shown meaningful progress in treatment and has not worked on plans for behavior modification to give him tools to modify his behavior. The court also noted his predatory acts were against family members and he has expressed a desire to return to his family, who appeared to have enabled his conduct.
 

 [¶18] The district court also found that, while no evidence was presented as to any recent resident behavior write-ups, the court in the last discharge hearing had found Voisine had 18 write-ups since April 2013, demonstrating an unwillingness to follow rules in a highly-structured setting. The court found this, along with his lack of progress in treatment, shows he continues to have serious difficulty in controlling his behavior. We conclude that while conduct in proximity to the hearing is relevant, the
 past still has some relevance. We therefore conclude the court's finding that he has serious difficulty controlling his behavior is supported by clear and convincing evidence.
 

 IV
 

 [¶19] The district court order is affirmed.
 

 [¶20] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.
 

 McEvers, Justice, concurring specially.
 

 [¶21] Although the district court's findings are thin as to whether the State met the burden to show Voisine would have serious difficulty controlling his behavior, the record supports the district court's ultimate finding. The court noted Voisine's lack of progress in treatment was a factor in finding Voisine would have serious difficulty controlling his behavior. We have said "[l]ack of progress in treatment
 
 alone
 
 is insufficient to meet this requirement for commitment."
 
 In re Johnson
 
 ,
 
 2016 ND 29
 
 , ¶ 7,
 
 876 N.W.2d 25
 
 (emphasis in original). However, review of the record reflects more than just lack of progress, it showed a lack of participation in treatment, falling asleep in group, and times when Voisine did not attend treatment. Failure to attend and participate in treatment might demonstrate an inability to control behavior similar to the violation of other institutional rules.
 
 Id.
 
 at ¶ 10 (citation omitted). While I am concerned the district court was relying on write-ups that occurred more than a year before the hearing was held, Voisine's conduct in treatment also supports the district court's finding that he would have serious difficulty controlling his behavior.
 

 [¶22] Lisa Fair McEvers
 

 Gerald W. VandeWalle, C.J.