2015 ND 218

**In the Matter of Darl John HEHN.**

**Ronald W. McBeth, Richland County State's Attorney, Petitioner and Appellee,**

v.

**Darl John Hehn, Respondent and Appellant.**

**No. 20140430.**

Supreme Court of North Dakota.

Aug. 25, 2015.

Jonathan R. Byers, Special Assistant State's Attorney, Bismarck, N.D., for petitioner and appellee.

Jonathan L. Green, Wahpeton, N.D., for respondent and appellant.

KAPSNER, Justice.

[¶ 1] Darl Hehn appeals from an order denying his petition for discharge from civil commitment as a sexually dangerous individual. We conclude Hehn waived his issue on appeal asserting statutory and constitutional violations on grounds the North Dakota State Hospital allegedly withheld treatment and was precluded from asserting a due process violation based on the State Hospital's failure to provide witnesses and other evidence. We further conclude the district court erred in requiring Hehn to remain handcuffed during an annual discharge hearing, but the error was harmless. We affirm.

I

[¶ 2] In 1997, Hehn pleaded guilty to two counts of gross sexual imposition and one count of terrorizing. In 2003, Hehn was released from prison on supervised probation but his probation was subsequently revoked, and he was returned to prison in 2004. In 2006, Hehn was committed to the North Dakota State Hospital as a sexually dangerous individual, and this Court affirmed the commitment. *In re Hehn,* 2008 ND 36, 745 N.W.2d 631. In 2010, Hehn petitioned for release from civil commitment, and the district court denied his petition. This Court reversed and

remanded for additional findings. *In re Hehn*, 2011 ND 214, ¶¶ 8–9, 806 N.W.2d 189. The district court made findings on remand and again denied his petition, and we summarily affirmed the order. *In re Hehn*, 2012 ND 191, ¶ 1, 821 N.W.2d 385.

[¶ 3] In 2011, Hehn filed a second petition for discharge. While his second petition was pending, Hehn also filed a letter with the district court requesting an annual review, which the court treated as a third petition. The district court denied his second petition, which we affirmed on appeal. *See In re Hehn*, 2013 ND 191, ¶¶ 11, 19, 838 N.W.2d 469. We also held that the district court did not err in denying Hehn a hearing on his third petition for discharge "until twelve months had passed since his last discharge hearing." *Id.* at ¶ 18.

[¶ 4] In December 2013, Hehn filed another petition requesting a discharge hearing. On August 14 and 15, 2014, the district court held an evidentiary hearing on Hehn's petition for discharge. In November 2014, the court denied his petition, finding he continues to be a sexually dangerous individual. The court found clear and convincing evidence that Hehn had engaged in sexually predatory conduct; has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; was likely to engage in future sexually predatory acts; and has serious difficulty controlling his behavior. The court specifically found a nexus between Hehn's disorder and the likelihood of re-offense and found Hehn would have serious difficulty controlling his behavior in a less restrictive environment.

## II

[¶ 5] Commitment proceedings for sexually dangerous individuals are civil proceedings. *In re M.D.*, 1999 ND 160,

¶¶ 27–31, 598 N.W.2d 799. At a discharge hearing the State must prove by clear and convincing evidence the committed individual remains a "sexually dangerous individual." N.D.C.C. § 25–03.3–18(4); *In re Hehn*, 2013 ND 191, ¶ 8, 838 N.W.2d 469. To prove a committed individual remains a "sexually dangerous individual," the State must show:

> (1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct.

*In re Thill*, 2014 ND 89, ¶ 5, 845 N.W.2d 330. "The phrase 'likely to engage in further acts of sexually predatory conduct' means the individual's propensity towards sexual violence is of such a degree as to pose a threat to others." *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686 (quotation marks omitted). In addition to the three statutory elements, the State must also prove the constitutionally required element that the individual has "serious difficulty controlling his behavior." *Id.; see also Kansas v. Crane*, 534 U.S. 407, 412–14, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). To comport with substantive due process requirements, this Court has:

> construe[d] the definition of a sexually dangerous individual to mean that proof of a *nexus between the requisite disorder and dangerousness* encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

*In re G.R.H.*, 2006 ND 56, ¶ 18, 711 N.W.2d 587 (emphasis added); *see also Crane*, at 412–14, 122 S.Ct. 867. This Court has held the conduct demonstrating an individual's "serious difficulty in controlling behavior" need not be sexual in nature. *In re Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644.

[¶ 6] This Court reviews the civil commitment of sexually dangerous individuals under a modified clearly erroneous standard of review. *Hehn*, 2013 ND 191, ¶ 7, 838 N.W.2d 469. "We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." *Id.* In reviewing the order, "[this Court] give[s] great deference to the [district] court's credibility determinations of expert witnesses and the weight to be given their testimony." *Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644. The district court is "the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations." *Id.*

[¶ 7] Here, Hehn has not raised an issue on appeal specifically challenging the district court's findings that he remains a "sexually dangerous individual" or that he has "serious difficulty in controlling behavior." Rather, he argues: 1) the State Hospital's withholding of sex offender treatment as punishment for his misconduct, while civilly committed, violates his statutory right to treatment, his right to substantive due process under the Fourteenth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment; and 2) the district court's failure to order the State Hospital to provide witnesses and other evidence, and failure to make individual findings before requiring him to remain handcuffed during the annual discharge hearing, violates his procedural due process rights under the Fourteenth Amendment.

III

[¶ 8] Hehn contends the State Hospital withheld sex offender treatment as punishment for his misconduct while civilly committed in violation of his statutory right to treatment, his right to substantive due process under the Fourteenth Amendment, and his right to be free from cruel and unusual punishment under the Eighth Amendment. Hehn argues that he has been civilly committed since 2006 and the State Hospital has denied him treatment for the majority of that time, contravening the requirement of treatment in the least restrictive manner under N.D.C.C. § 25–03.3–13. Hehn argues the State Hospital's application of N.D.C.C. ch. 25–03.3 has rendered his civil commitment "punitive" by "completely" denying him treatment under confinement conditions that constitute cruel and unusual punishment.

[¶ 9] The State responds that Hehn has raised new constitutional challenges on appeal that he did not raise in the district court. The State asserts there is no record the State Hospital withheld treatment from Hehn and the evidence shows that although treatment is available to him, he has refused to follow basic rules that allow the State Hospital to maintain discipline. The State contends that Hehn has been demoted to the lowest treatment stage and has had to repeat assignments because of his behavior and that Hehn admitted intentionally violating the law while at the State Hospital to go back to prison. The State contends Hehn's own conduct has resulted in him not advancing in treatment.

[¶ 10] We have said that "[w]hen a party fails to raise an issue before the district court, even a constitutional issue, we generally will not address the issue on ap-

peal." *In re R.A.S.*, 2008 ND 185, ¶ 12, 756 N.W.2d 771. Further, "[a] party must do more than submit bare assertions to adequately raise constitutional issues." *Id.* (quoting *E.W.F.*, 2008 ND 130, ¶ 21, 751 N.W.2d 686).

[¶ 11] Here, Hehn reserved and then waived making an opening statement at the discharge hearing. The parties submitted their closing arguments to the district court in writing, and Hehn did not assert in his closing argument that the State Hospital had withheld treatment from him or that the alleged withholding of treatment violated his statutory and constitutional rights. Rather, he argued the State had failed to establish that he had hebephilia, or that such a diagnosis exists; that he is likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others; and that he would have difficulty controlling his behavior.

[¶ 12] Hehn also argued there were lesser restrictive means for treating his borderline personality disorder with antisocial traits that did not require his continued commitment and he should be released to a less restrictive and less stressful environment to undergo therapy for this disorder. While he conceded having "some outbursts" at the State Hospital, he contended "that is the very nature of his disorder." Nonetheless, Hehn did not argue in the district court that the State Hospital had "withheld" treatment as punishment in violation of his statutory and constitutional rights. We therefore will not address this issue on appeal.

[¶ 13] We note, however, that after denying Hehn's petition for discharge, the district court observed in dicta:

> The issue that is the most troubling to the Court is that it appears that treatment of the underlying diagnosis of the personality disorder is necessary for the Respondent to make any progress pertaining to his likelihood to re-offend. At some point, if the State Hospital continues to ignore the underlying diagnosis, this Court will find that continued commitment will be a violation of the Respondent's due process rights.

There is evidence in this record that Hehn has engaged in troubling behavior that includes destruction of property and physical aggression, in addition to numerous behavior write-ups with verbal aggression and threats to hospital staff. Hehn pleaded guilty to criminal charges for disorderly conduct and menacing, apparently stemming from his threats to staff by swinging a belt with a buckle over his head and by making threatening gestures with a shovel. Hehn testified at the hearing that he was trying to get sent back to prison, where he asserts the conditions were better than at the State Hospital.

[¶ 14] We do not construe the district court's warning to the State Hospital as an invitation for Hehn to continue his defiant and destructive behavior and to resist participating in treatment. However, to the extent Hehn's sex offender treatment at the State Hospital has not included treatment for his underlying diagnosed condition of borderline personality disorder, we share the district court's concern.

IV

[¶ 15] Hehn argues the district court's failure to order the State Hospital to provide witnesses and other evidence and to make individual findings before requiring him to remain handcuffed during the hearing on the petition for discharge violated his right to procedural due process.

A

[¶ 16] Hehn argues the district court erred in not ordering the State Hos-

pital to provide witnesses and other evidence.

[¶ 17] We have discussed the scope of permissible discovery for commitment proceedings of sexually dangerous individuals in *In re G.L.D.*, 2014 ND 194, ¶¶ 12–14, 855 N.W.2d 99:

> We have recognized that commitment proceedings for sexually dangerous individuals are civil proceedings. *[In re] M.D.*, 1999 ND 160, ¶¶ 27–31, 598 N.W.2d 799. In civil proceedings, N.D.R.Civ.P. 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense" and further provides "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Under N.D.R.Civ.P. 26(b)(1), the court may limit discovery that is unreasonably cumulative or obtainable from other sources.
>
> A district court has broad discretion regarding the scope of discovery in a civil proceeding, and its discovery decisions will not be reversed on appeal absent an abuse of discretion. *Western Horizons Living Ctrs. v. Feland*, 2014 ND 175, ¶ 11, 853 N.W.2d 36. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misapplies or misinterprets the law. *Id.*
>
> Under N.D.C.C. ch. 25–03.3, a retained or appointed attorney has the right to obtain individually identifiable health information regarding a committed individual in a commitment proceeding. N.D.C.C. § 25–03.3–05(2). Moreover, upon request, any confidential records provided to the state's attorney under N.D.C.C. ch. 25–03.3 must be made available to a committed individual's attorney. N.D.C.C. § 25–03.3–06. Under those provisions, a committed individual has a right to obtain individually identifiable health information and any confidential records provided to the state's attorney.

[¶ 18] Here, Hehn's discharge hearing was initially scheduled for April 17, 2014. However, the parties stipulated to a continuance, and the district court rescheduled the hearing for August 14 and 15, 2014. On August 6, 2014, Hehn filed a subpoena duces tecum, which was electronically served on counsel for the State, demanding that the State Hospital produce voluminous records by August 12. This subpoena, however, was apparently not personally served on the State Hospital in the manner required under N.D.R.Civ.P. 4(d). *See* N.D.R.Civ.P. 45(b) and N.D.R.Civ.P. 4(d)(2)(F). On August 7, 2014, Hehn filed ten subpoenas requiring the appearance and testimony at the discharge hearing of certain State Hospital staff and individuals committed at the hospital, which was electronically served on the counsel for the State. However, apparently none of the subpoenas were personally served under N.D.R.Civ.P. 4(d), nor were fees, mileage, and travel expense tendered with the subpoena as required under N.D.R.Civ.P. 45(b). Hehn also filed with the court a proposed order to transport three committed individuals from the State Hospital to the discharge hearing.

[¶ 19] On August 11, 2014, the district court held a telephonic hearing, during which the court apparently denied the transport order. The State contends on appeal that the court was advised of the lack of service of the subpoenas and the undue burden that would be created by the State Hospital having to provide enough staff to transport and supervise three sexually dangerous individuals from the State

Hospital in Jamestown to the hearing in Wahpeton. However, in this appeal Hehn has not requested or filed a transcript of this telephonic hearing. On August 12, 2014, Hehn filed a motion for five individuals committed at the hospital to appear by telephone at the discharge hearing. Hehn, however, did not file a brief with the motion, serve a notice of motion, or request a hearing date under N.D.R.Ct. 3.2. When the district court subsequently denied his motion to permit the telephonic testimony during the discharge hearing, the court indicated it was not going to relitigate all of the write-ups that Hehn had received at the State Hospital.

[¶ 20] Hehn contends that he had the right to obtain confidential records that are provided to the state's attorney and individually identifiable health information and his procedural due process rights were violated when the district court denied all of his subpoenas for documents, including requests for Hehn's treatment plan and write-ups by hospital staff members. He also contends his right to cross-examine witnesses was violated when the court denied his right to call witnesses from the State Hospital. Hehn argues it was crucial for him to be able to call as witnesses the hospital staff members who had completed the write-ups and the hospital residents who may have witnessed the alleged incidents.

[¶ 21] The State responds, however, that Hehn has not properly raised his procedural due process claim. The State contends that the subpoena for records from the State Hospital did not follow the service requirements under N.D.R.Civ.P. 4(d); that the ten subpoenas for appearances of State Hospital staff and other individuals committed at the State Hospital were not personally served under N.D.R.Civ.P. 4(d) and did not comply with N.D.R.Civ.P. 45(b)(1); and that there is an inadequate record on appeal to review this issue because Hehn did not request a transcript of the August 11 telephonic hearing.

[¶ 22] Generally, "[a] party's failure to provide a transcript of the proceedings in the district court may prevent the party from prevailing on appeal." *State v. Apland,* 2015 ND 29, ¶ 12, 858 N.W.2d 915 (quoting *State v. Skarsgard,* 2007 ND 160, ¶ 6, 739 N.W.2d 786). "We will not review an issue if the record on appeal does not allow for a meaningful and intelligent review of the district court's alleged error." *Id.*

[¶ 23] Based on this record, while the information and records sought by Hehn were potentially relevant and subject to discovery, *see* N.D.C.C. §§ 25–03.3–05(2) and 25–03.3–06, Hehn does not appear to have complied with our civil procedural rules to obtain the information and records and, specifically, failed to comply with N.D.R.Civ.P. 45 governing subpoenas. Moreover, because Hehn has not provided a transcript of the telephonic hearing on August 11, 2014, during which the district court apparently addressed and disposed of at least some of these issues, we are unable to meaningfully and intelligently review this issue.

B

[¶ 24] Hehn argues the district court erred by failing to make individual findings before requiring him to remain handcuffed during the hearing on the petition for discharge. Hehn contends the district court failed to make a determination on the record that the use of physical restraints in the commitment proceedings were necessary and the restraints did not exceed the level required by the particular situation. Hehn contends the court's failure to make any individualized findings denied him due process.

[¶ 25] This Court reviews the district court's decision whether to use physical restraints during court proceedings for an abuse of discretion. *In re Hoff*, 2013 ND 68, ¶ 6, 830 N.W.2d 608. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* In considering the use of restraints in involuntary commitment proceedings, we have said the district court must engage in "an individualized determination on the record that restraints are necessary and restraints should not exceed what the particular situation requires." *Id.* at ¶ 9. We further explained the court should consider "the accused's record, temperament, and the desperateness of his situation; the security situation at the courtroom and courthouse; the accused's physical condition; and whether there was an adequate means of providing security that was less prejudicial." *Id.* at ¶ 12 (quoting *In re R.W.S.*, 2007 ND 37, ¶ 18, 728 N.W.2d 326).

[¶ 26] Here, at the outset of the discharge hearing, Hehn asked that his handcuffs be removed. Rather than making an "individualized determination," the district court denied Hehn's request and left the issue of restraints to the sheriff's "sound discretion" in providing security for the court. The court's delegation of its discretion to the sheriff plainly does not comport with our law. Nonetheless, a district court's error in failing to exercise its discretion to independently decide whether to remove restraints is subject to a harmless error analysis. *See Hoff*, 2013 ND 68, ¶ 19, 830 N.W.2d 608. We explained in *Hoff*, at ¶ 19:

> Under *R.W.S.*, the district court's error in failing to exercise its discretion to independently decide whether to remove Hoff's restraints is subjected to the harmless error test. *[In re] R.W.S.*, 2007 ND 37, ¶ 19, 728 N.W.2d 326. "Federal constitutional errors do not automatically require reversal if it is shown that they were harmless, but before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* (citation and quotation omitted). "In declaring this belief, the court must be convinced the error did not contribute to the verdict," and "the burden is on the beneficiary of a constitutional error to prove the error is harmless beyond a reasonable doubt." *Id.* (citation and quotation omitted). In *R.W.S.*, we held the use of restraints was harmless error because there was "overwhelming evidence" of the child's guilt. *Id.* at ¶ 1. On this record, it cannot be said that the error was harmless. Hoff's continuing commitment is based upon expert testimony and the experts do not agree. However, the experts do agree that Hoff has no sexual deviancy. Neither expert diagnoses Hoff with a sexual deviancy under Axis I. Chapter 25–03.3, N.D.C.C., is designed to deal with sexually dangerous predators. Where no sexual deviancy exists, courts should proceed with caution.

In *Hoff*, we concluded the district court's error in failing to independently decide whether to remove Hoff's restraints was not harmless because there was no suggestion in the record that Hoff presented a security risk. *Id.*

[¶ 27] In this case, however, the record suggests that Hehn presented a security risk. There is evidence in the record that Hehn had engaged in previous aggression and violence at the State Hospital, including disruptive behavior and threatening

statements, and had convictions for disorderly conduct and menacing resulting from his conduct at the State Hospital. Although we again emphasize that the district court must exercise its discretion to independently decide and make findings regarding the individualized determination on the need for restraints, we conclude that the court's failure to do so here constitutes harmless error.

V

[¶ 28] The district court order is affirmed.

[¶ 29] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.