2017 ND 153

**IN the INTEREST OF Kelly TANNER**

**State of North Dakota, Petitioner
and Appellee**

v.

**Kelly Tanner, Respondent
and Appellant**

No. 20160231

Supreme Court of North Dakota.

Filed 6/29/2017

Gary D. Neuharth, Dickey County State's Attorney, Ellendale, ND, for petitioner and appellee; submitted on brief.

Jason R. Butts, Wahpeton, ND, for respondent and appellant; submitted on brief.

Kapsner, Justice.

[¶ 1] Kelly Tanner appeals from a district court order finding he remains a sexually dangerous individual and denying his petition for discharge from the North Dakota State Hospital. Because we conclude the district court order denying Tanner's petition for discharge is supported by the record and is not induced by an erroneous view of the law, we affirm the district court order continuing civil commitment.

I

[¶ 2] In 2008, Tanner, age 22, was convicted of sexual assault for having sexual intercourse with a sixteen-year-old female in violation of N.D.C.C. § 12.1–20–07. The district court sentenced Tanner to one year of probation for the offense. In 2009, Tanner was convicted of failure to register as a sex offender and was sentenced to five years in prison with four years and eleven months suspended for two years of supervised probation. In 2010, Tanner's probation was revoked, and he was sentenced to one year of incarceration with two years of supervised probation to follow. Just before Tanner was released from incarceration, the State petitioned the district court to civilly commit Tanner as a sexually dangerous individual. The district court held a preliminary hearing, ordered an evaluation, and later held an initial commitment hearing. After the commitment hearing, the district court found Tanner was a sexually dangerous individual and ordered civil commitment. Tanner appealed the order of commitment, and this Court affirmed in *Interest of Tanner*, 2012 ND 127, 821 N.W.2d 385.

[¶ 3] Tanner petitioned for discharge in 2013 and 2014, and the district court or-

dered continued commitment on both occasions. Tanner petitioned for discharge a third time in September 2015. The State's doctor, Dr. Krance, evaluated Tanner and filed a report on December 18, 2015. Dr. Krance updated this report with an addendum on April 11, 2016 and a second addendum on May 4, 2016. Dr. Benson, an independent doctor who previously evaluated Tanner, conducted an evaluation and filed a report on April 12, 2016. The district court held a hearing on May 10, 2016, at which both Dr. Krance and Dr. Benson testified. The district court concluded Tanner remained a sexually dangerous individual and denied the petition for discharge. Tanner appealed.

## II

[¶ 4] On appeal, Tanner argues the district court erred by finding the State had proven Tanner to be a sexually dangerous individual by clear and convincing evidence. "We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review." *Matter of Midgett*, 2009 ND 106, ¶ 5, 766 N.W.2d 717. "We will affirm a trial court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." *Matter of Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644 (citation omitted). We give "great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *Id.* At a discharge hearing, the State must prove by clear and convincing evidence the committed individual remains a "sexually dangerous individual" under N.D.C.C. § 25–03.3–18(4). *Matter of Hehn*, 2015 ND 218, ¶ 5, 868 N.W.2d 551. To prove a committed individual remains a "sexually dangerous individual," the State must show three statutory elements:

(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct.

*Id. See* N.D.C.C. § 25–03.3–01(8).

[¶ 5] This Court has recognized substantive due process requires additional proof beyond the three statutory elements:

In addition to the three statutory requirements, to satisfy substantive due process, the State must also prove the committed individual has serious difficulty controlling his behavior. . . .

We construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

*Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644 (citations omitted). This Court has explained, "constitutional considerations require a connection between the disorder and the lack of control." *Id.* This Court has also held the conduct demonstrating an individual's "serious difficulty in controlling behavior" need not be sexual in nature. *Id.*

[¶ 6] Tanner does not contest the district court's findings that he has engaged in sexually predatory conduct and that he has a congenital or acquired condition that is manifested by a sexual disorder, personality disorder, or other mental disorder or dysfunction. Tanner contends

the State failed to prove by clear and convincing evidence that he is likely to engage in further acts of sexually predatory conduct. We have recognized the phrase "likely to engage in further acts of sexually predatory conduct" under N.D.C.C. § 25–03.3–01(8), "means the individual's propensity towards sexual violence is of such a degree as to pose a threat to others." *Matter of Rubey*, 2011 ND 165, ¶ 5, 801 N.W.2d 702 (citation omitted).

[¶ 7] Tanner argues the district court erred because the State failed to prove he is likely to engage in further acts of sexually predatory conduct. Tanner argues the district court erred in its conclusion because Dr. Benson testified she saw significant improvement and recommended release. Tanner argues the district court improperly disregarded Dr. Benson's testimony and report. "A claim that the district court improperly relied on one expert's opinion over the other challenges the weight of the evidence, not the sufficiency of the evidence." *Interest of Thill*, 2014 ND 89, ¶ 17, 845 N.W.2d 330. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* "The trial court is the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations." *Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644.

[¶ 8] The district court order determined the State's doctor, Dr. Krance, was more credible. The district court noted, "Dr. Benson disagrees with Dr. Krance that Tanner is likely to engage in further acts of sexually predatory conduct." In concluding Tanner is likely to engage in further acts of sexually predatory conduct, the district court stated Tanner's diagnosis of "antisocial personality disorder is characterized by opportunistic and predatory offending, impulsivity, deceitfulness, and a lack of remorse or empathy for his victims,

and that the disorder predisposes him to act impulsively and to disregard the wishes, rights and safety of others in order to achieve his own ends."

[¶ 9] The district court found "[p]articularly troubling" that Tanner "acted out sexually during this review period, twice." The court noted Tanner was written up for the same behavior later in the same month. The court referred to incidents where Tanner was reprimanded for "inappropriate touching in a visiting room" on two occasions. Dr. Benson testified Tanner was "engaging in what staff determined to be sexually inappropriate behavior with his adult female girlfriend." These findings are supported by the record. The district court indicated Tanner's repetition of this conduct after being warned and reprimanded was behavior that "alone satisfies prongs 3 AND 4 in this court's opinion." The record reflects Tanner had five behavioral writeups at the time the evaluation was completed and five more since the completion of the evaluation. The district court identified the existence of writeups as necessary to its conclusion, noting the writeups involved "inappropriate touching." The district court's conclusion Tanner was likely to engage in further acts of sexually predatory conduct also considered actuarial test results. The district court tied this all together stating, "Tanner's risk level is high and that is exacerbated by the nature of his diagnosis...." The district court's conclusion was supported by the record and was not induced by an erroneous view of the law. *Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644.

[¶ 10] The district court also concluded Tanner has serious difficulty controlling his behavior as required by *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The district court noted Tanner "is sexually acting out while in the State Hospital[,]" which is a "highly

restrictive environment where he knows he is being observed." The district court also found a nexus between Tanner's disorder and the likelihood of reoffense based on Dr. Krance's testimony. As described above, the district court indicated Tanner's repetition of inappropriate behavior after being warned and reprimanded, supported its finding Tanner has serious difficulty controlling his behavior. This Court gives "great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644. Specifically, the district court stated, "Tanner has a high level of psychopathy in combination with a diagnosis of Antisocial Personality Disorder. This results in Tanner being unable to follow the rules in this strictly controlled environment." Based on this, the district court concluded, "[i]f he cannot control his behavior in that environment, it leaves little doubt that he has an extremely difficult time controlling his behavior[.]" This Court has held the conduct demonstrating an individual's "serious difficulty in controlling behavior" need not be sexual in nature. *Wolff*, at ¶ 7. The record indicates Tanner had writeups for general rule violations and instances where Tanner "acted out sexually." The district court's findings are also sufficiently specific to allow this Court to understand the basis for its decision. *Interest of Johnson*, 2015 ND 71, ¶ 9, 861 N.W.2d 484. The district court's findings are supported by the record and are not induced by an erroneous view of the law.

### III

[¶ 11] We conclude the district court's denial of Tanner's petition for discharge is supported by the record and is not induced by an erroneous view of the law. We affirm the district court order continuing civil commitment.

[¶ 12] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale V. Sandstrom, S.J.

[¶ 13] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.