# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 167

In the Interest of T.A.G.

----------

Julie Lawyer,                                                  Petitioner and Appellee

v.

T.A.G.,                                                          Respondent and Appellant

No. 20180374

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable John W. Grinsteiner, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Julie A. Lawyer, Burleigh County State's Attorney, Bismarck, ND, petitioner and appellee.

Tyler J. Morrow, Grand Forks, ND, for respondent and appellant.

**Crothers, Justice.**

[¶1]    T.A.G. appeals from an order denying discharge from commitment as a sexually dangerous individual.  He argues the findings are insufficient to demonstrate he has serious difficulty controlling his behavior.  The order denying T.A.G.'s petition for discharge is reversed because the findings are insufficient to conclude the due process requirement has been met under *Kansas v. Crane*, 534 U.S. 407 (2002).

I

[¶2]    In 2005, near the end of a five-year sentence for conviction of corruption or solicitation of a minor, the State successfully petitioned to commit T.A.G. as a sexually dangerous individual.  In 2006, 2010, 2011, and 2012, T.A.G. unsuccessfully petitioned for discharge.  T.A.G. appealed the 2012 order and this Court affirmed. *Interest of T.A.G.*, 2015 ND 256, 872 N.W.2d 633.

[¶3]    In 2017 T.A.G. requested a discharge hearing under N.D.C.C. § 25-03.3-18. On September 7, 2018, the district court had a hearing and heard testimony from an examining psychologist and T.A.G.  On October 17, 2018, the court denied T.A.G.'s petition for discharge.  On May 6, 2019, the case was remanded for additional findings of fact on whether T.A.G. was likely to re-offend and had serious difficulty controlling his behavior.  *Interest of T.A.G.*, 2019 ND 115, 926 N.W.2d 702.  On May 9, 2019, the district court made additional findings of fact, conclusions of law and issued an order for continuing commitment.

II

[¶4]    This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard, and we will affirm a district court decision unless it is induced by an erroneous view of the law, or we are firmly convinced the

decision is not supported by clear and convincing evidence. *Interest of Tanner*, 2017 ND 153, ¶ 4, 897 N.W.2d 901. The burden is on the State to prove by clear and convincing evidence the petitioner remains a sexually dangerous individual. N.D.C.C. § 25-03.3-18(4). The State must prove three statutory elements to show the petitioner remains a sexually dangerous individual under N.D.C.C. § 25-03.3-01(8):

> "[1] [the individual] engaged in sexually predatory conduct and [2] . . . has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction [3] that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others."

[¶5] The State also must meet substantive due process requirements by proving the individual has serious difficulty in controlling his behavior. *Interest of Tanner*, 2017 ND 153, ¶ 5, 897 N.W.2d 901. Consistent with the holding in *Kansas v. Crane*, 534 U.S. 407 (2002), the definition of a sexually dangerous individual requires "proof of a nexus between the requisite disorder and dangerousness to encompass proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case." *Interest of Carter*, 2019 ND 67, ¶ 4, 924 N.W.2d 112 (internal quotation marks omitted). Neither our law nor *Kansas v. Crane*, "require the conduct evidencing the individual's serious difficulty in controlling his behavior to be sexual in nature." *In re Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644.

[¶6] Constitutional considerations require a causal connection between the disorder and inability to control behavior, which would likely result in future sexually predatory conduct. *Tanner*, 2017 ND 153, ¶ 5, 897 N.W.2d 901; *Matter of J.M.*, 2019 ND 125, ¶ 9, 927 N.W.2d 422. The district court may consider non-sexual conduct demonstrating a serious difficulty controlling behavior, but the presence of a mental disorder or condition alone does not satisfy the requirement of clear and convincing evidence the individual is likely to engage in further sexually predatory conduct. *J.M.*, 2019 ND 125, ¶ 9, 927 N.W.2d 422. The district court must state the

specific factual findings used to support legal conclusions, and errs as a matter of law if the findings are insufficient or do not support the legal conclusions. *Id.* at ¶ 10.

## III

[¶7]    The parties stipulated to elements one and two. The case was remanded for additional findings of fact on whether T.A.G. was likely to re-offend and had serious difficulty controlling behavior based on the following language from the initial order:

> "Dr. Fox's report and testimony indicate that the Respondent has serious difficulty in controlling his behavior while at the State Hospital. The Respondent has had behavioral issues while in the State Hospital. The Respondent has not completed all levels of treatment as he has a cyclical pattern of making progress in treatment and then slipping backwards in the program. Dr. Fox indicated that based on the Respondent's history of sexual predatory conduct and non-sexual offenses, his history of psychopathy, drug dependence, and his sexual preoccupation make it likely that the Respondent would have serious difficulty controlling his behavior.
>
> "The Respondent testified that he had completed treatment and one of the behavioral write-ups noted by Dr. Fox, which included a statement about 'cream pie' that was interpreted as a sexual comment, was in accurate [sic]. He testified that he did not say what was reported and there was no sexual innuendo in what he did say. However, the Court noted that there were approximately thirty (30) pages of Dr. Fox's report that included behavior issues noted of the Respondent at the State Hospital. The behavior write-ups and treatment notes show the Respondent has serious difficulty controlling his sexual and other behaviors in a controlled setting at the State Hospital."

[¶8]    On remand, the district court made additional findings that met the third prong that T.A.G. is likely to re-offend. Evidence supports the finding T.A.G.'s diagnosis impairs his ability to appreciate the consequences of his criminal behavior and he fails to recognize the harm he causes to his victims. The findings addressed specific risk factors on T.A.G.'s likelihood to re-offend, including the number of sexual offenses, the diversity and escalation of his offenses including both non-contact and contact type, and the attitude towards his offenses, including T.A.G.'s belief it is natural for thirteen- and fourteen-year-old girls to have sex based on information he read in the

Bible. The additional findings analyzed the test scores provided by the psychologist and compared the results with similar inmates with the same characteristics. The district court did not clearly err in finding T.A.G. is likely to re-offend.

[¶9] Regarding the *Crane* due process requirement and T.A.G.'s difficulty controlling his behavior, the additional findings of fact address testimony and reports of the psychologist that while T.A.G. engages in treatment to a higher degree in recent months, he has not excelled and continues to have problems in his progress over the review period:

> "While progress in treatment can be a protective factor that may impact risk of sexual recidivism, [the psychologist] indicated that due to [T.A.G.'s] diagnosis and risk factors, a longer and sustained period of time is needed for him to develop and sustain the skills necessary to control his behavior in the community. The court finds that the progress is insufficient to effectively reduce his risk below 'likely to reoffend.' [The psychologist] noted that the progress in treatment by [T.A.G] is tempered by his failure to accept responsibility for his actions; and his lack of impulse control, along with inappropriate statements and actions to staff in the highly restricted environment of the State Hospital.
>
> "[T.A.G.] continues to have behavioral issues, has not completed all levels of treatment and he has a cyclical pattern of making progress and then slipping backwards in the program. [The psychologist's] [e]valuation [u]pdate indicated [T.A.G.] was back on Level 1, the lowest level at the State Hospital. As such, [T.A.G.] has not progressed in treatment to lessen his degree of risk and has demonstrated he continues to have difficulty following the rules. Combined with his history of predatory conduct and other offenses, his history of psychopathy, drug dependence, and his sexual preoccupation, this causes the [c]ourt to find him to have serious difficulty controlling his behavior if he were released from the State Hospital."

[¶10] The original and additional findings provide insufficient evidence to support a finding T.A.G. has serious difficulty controlling his behavior in a way that distinguishes him from a "dangerous but typical recidivist in the ordinary criminal case." *Carter*, 2019 ND 67, ¶ 4, 924 N.W.2d 112. Lack of progress within treatment may indicate serious difficulty controlling behavior, but one does not equal the other. *In re Johnson*, 2016 ND 29, ¶ 7, 876 N.W.2d 25. Lack of progress in treatment alone

4

is insufficient to determine an individual has serious difficulty controlling personal behavior, and specific findings are required to meet the *Crane* requirement. *Id.*

[¶11] Both the original and additional findings address "behavioral issues" but specific findings do not exist beyond one statement regarding a "cream pie." The additional findings rely on T.A.G.'s lack of progress within treatment as evidence of serious difficulty controlling behavior; however, T.A.G.'s cyclical pattern of making progress and slipping backward was included as a factor in the original order. The additional findings of fact reference a March 2018 update to the June 2017 annual evaluation, but only regarding T.A.G.'s progress in treatment. The additional findings did not include further findings of fact supporting T.A.G.'s serious difficulty controlling his behavior. The status in treatment and one statement regarding "cream pie" do not establish a serious difficulty controlling behavior sufficient to satisfy the *Crane* due process requirement. Therefore, the finding that T.A.G. is a sexually dangerous individual is clearly erroneous.


IV

[¶12] The order denying T.A.G.'s petition for discharge is reversed and T.A.G shall be released from civil commitment.

[¶13] Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Lisa Fair McEvers
Gerald W. VandeWalle, C.J.