IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2019 ND 302

In the Interest of Raymond Voisine,

Ladd R. Erickson, State's Attorney,                    Petitioner and Appellee

v.

Raymond J. Voisine,                    Respondent and Appellant

No. 20190155

Appeal from the District Court of Sheridan County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Ladd Erickson, State's Attorney, Washburn, ND, for petitioner and appellee.

Tyler Morrow, Grand Forks, ND, for respondent and appellant.

**Crothers, Justice.**

[¶1] Raymond Voisine appeals from a district court order finding he remains a sexually dangerous individual. He argues the district court erred by (1) granting the State's request for continuance, (2) not holding a hearing within 365 days of the previous report or within a calendar year, (3) allowing the State to file and rely on an expert's report that was filed late, and (4) finding by clear and convincing evidence that Voisine remains a sexually dangerous individual. The dispositive issue is whether clear and convincing evidence exists establishing Voisine remains a sexually dangerous individual. We reverse.

I

[¶2] "In 2004, Voisine was incarcerated after he pled guilty to gross sexual imposition for acts involving a six-year-old victim." *Interest of Voisine*, 2018 ND 181, ¶ 2, 915 N.W.2d 647. In *Voisine*, at ¶¶ 2-4, this Court discussed the underlying facts leading to his incarceration and subsequent commitment as a sexually dangerous individual:

> "Voisine [was, at that time,] a 65-year-old male with four adult children, R.V., P.P., H.M. and L.K. In 2003, an officer with the North Dakota Bureau of Criminal Investigation executed a search warrant on Voisine's home for an unrelated firearms charge. During the search, the officer found sexually explicit photographs under the pillow on Voisine's bed. The photographs pictured H.M., one of Voisine's three adult daughters. DNA analysis was performed and established with over 99.99 percent certainty that Voisine fathered two children with H.M.

"In light of Voisine's incestuous relations, interviews were conducted with his acquaintances. Voisine's grandson reported that when he was 6 or 7 years old, he was forced to stroke Voisine's penis for 5 to 10 minutes. The ex-husband of H.M. reported that Voisine threatened him with a firearm and fathered a child with P.P., Voisine's adult daughter. Voisine's ex-wife reported that Voisine beat and threatened her while they were married. The current boyfriend of Voisine's ex-wife reported that Voisine's children were sexually abused when they were minors. Voisine's daughter, L.K., reported that she was born to a 17-year-old mother who was impregnated by a 34-year-old Voisine. L.K. also reported that Voisine physically abused her when she was young and that she once walked in on Voisine unzipping his pants behind a naked and bent-over H.M. L.K. later denied stating H.M. was naked.

"Following the investigation, Voisine was charged with gross sexual imposition for sexual contact with his 6- or 7-year-old grandson and with promoting obscenity to a minor for allegedly showing pornography to a second, 9- or 10-year-old grandson who was also Voisine's son. Voisine pled guilty to gross sexual imposition, and the promotion of obscenity charge was dismissed. He was incarcerated, and upon his release in 2008, the State petitioned to commit him as a sexually dangerous individual. The State alleged that in addition to the sexual contact underlying Voisine's gross sexual imposition conviction, that Voisine sired three children with two of his daughters, that Voisine sexually abused his daughters as minors, that Voisine conceived a child with a 16-year-old girl in Maine and that Voisine promoted obscenity to a minor by showing pornography to his 9- or 10-year-old grandson/son.

"After he was released from custody, the district court revoked his probation for failing to complete sex offender treatment while incarcerated. In a post-conviction proceeding, his probation revocation was reversed. *Voisine v. State*, 2008 ND 91, ¶ 17, 748 N.W.2d 429. The State petitioned to commit Voisine for treatment as a sexually dangerous individual, which the district court subsequently granted. This Court reversed and remanded the case for further proceedings in *Voisine*, 2010 ND 17, ¶ 15, 777 N.W.2d 908, and after further proceedings summarily affirmed an order committing Voisine for treatment. *Interest of Voisine*, 2010 ND 241, ¶ 1, 795 N.W.2d 38."

2

[¶3]   The district court denied his subsequent petitions for discharge from commitment, which were affirmed on appeal. *See Interest of Voisine*, 2018 ND 181, ¶ 1, 915 N.W.2d 647; *Interest of Voisine*, 2016 ND 254, ¶ 24, 888 N.W.2d 781; *Interest of Voisine*, 2014 ND 178, ¶ 2, 859 N.W.2d 930; *Interest of Voisine*, 2012 ND 250, ¶ 1, 823 N.W.2d 786. This Court also affirmed a district court order denying post-conviction relief. *Voisine v. State*, 2014 ND 98, ¶ 2, 859 N.W.2d 930.

[¶4]   On October 9, 2018, Voisine requested a discharge hearing. On October 17, 2018, the hearing was scheduled for February 1, 2019. On January 30, 2019, the State requested a continuance. Voisine objected to the continuance. On January 31, 2019, the district court continued the hearing until March 25, 2019. After the hearing, the district court found Voisine remained a sexually dangerous individual. Voisine appeals.

II

[¶5]   This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard, and the district court's decision will be affirmed unless it is induced by an erroneous view of the law, or we are firmly convinced the decision is not supported by clear and convincing evidence. *Matter of R.A.S.*, 2019 ND 169, ¶ 5, 930 N.W.2d 162 (citing *Interest of Tanner*, 2017 ND 153, ¶ 4, 897 N.W.2d 901). Great deference is given to the district court's credibility determinations of expert witnesses and the weight given to their testimony. *Voisine*, 2018 ND 181, ¶ 5, 915 N.W.2d 647 (citing *Tanner*, at ¶ 4; *Matter of Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644).

[¶6]   "At a discharge hearing, the State must prove by clear and convincing evidence that the committed individual remains a 'sexually dangerous

3

individual' under N.D.C.C. § 25-03.3-18(4)." *Voisine*, 2018 ND 181, ¶ 6, 915 N.W.2d 647 (citing *Matter of Hehn*, 2015 ND 218, ¶ 5, 868 N.W.2d 551). Under N.D.C.C. § 25-03.3-01(8), the State must prove three elements:

> "(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct."

*Voisine*, at ¶ 6 (citing *Tanner,* 2017 ND 153, ¶ 4, 897 N.W.2d 901). "Further, 'the United States Supreme Court held that in order to satisfy substantive due process requirements, the individual must be shown to have serious difficulty controlling his behavior.'" *Voisine*, at ¶ 6 (citing *Matter of Hehn*, 2008 ND 36, ¶ 19, 745 N.W.2d 631); *Kansas v. Crane*, 534 U.S. 407, 413 (2002). "We therefore construe 'sexually dangerous individual' as meaning 'proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.'" *Voisine*, at ¶ 6 (citing *Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644 (quoting *Interest of J.M.*, 2006 ND 96, ¶ 10, 713 N.W.2d 518)).

III

[¶7] Voisine challenges the court's findings on statutory prongs two and three, and the "serious difficulty" factor required under *Kansas* v. *Crane*, 534 U.S. at 413.

[¶8] "This Court 'defer[s] to a district court's determination that an individual has serious difficulty controlling behavior when it is supported by specific

4

findings demonstrating the difficulty.'" *Matter of J.M.*, 2019 ND 125, ¶ 14, 927 N.W.2d 422 (citing *In re Johnson*, 2016 ND 29, ¶ 5, 876 N.W.2d 25). Here, the finding that Voisine remains a sexually dangerous individual was not supported by clear and convincing evidence.

[¶9] The State bears the burden of showing by clear and convincing evidence the risk posed by Voisine is distinguishable "from the dangerous but typical recidivist in the ordinary criminal case." *J.M.*, 2019 ND 125, ¶ 14, 927 N.W.2d 422 (citing *Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644). Notably, the burden is not whether an individual remains the same as previous reviews. Regarding the *Crane* factor, "[w]hile the court may rely on actions that are non-sexual in nature, '[t]he evidence must clearly show . . . a serious difficulty in controlling sexually predatory behavior.'" *J.M.*, at ¶ 16 (citing *In the Interest of J.M.*, 2006 ND 96, ¶ 10, 713 N.W.2d 518). "Lack of progress in treatment *alone* is insufficient to meet this requirement for commitment." *Voisine*, 2018 ND 181, ¶ 21, 915 N.W.2d 647 (McEvers, J., concurring specially, VandeWalle, C.J., joined) (citing *Johnson*, 2016 ND 29, ¶ 7, 876 N.W.2d 25 (emphasis in original)).

[¶10] Two witnesses testified at the discharge hearing. Dr. Benson, Voisine's Independent Examiner, testified Voisine did not meet the second or third prongs, or the serious difficulty factor, and therefore Voisine was not a sexually dangerous individual. Dr. Byrne concluded Voisine met the second, third and serious difficulty factor, and remains a sexually dangerous individual.

[¶11] The district court largely relied on Dr. Byrne's testimony and report. Regarding the *Crane* factor, the district court found "Voisine has not made any progress in his treatment and that he has not demonstrated that he would be able or willing to control his behavior if he were to be released into the

community." The court's "serious difficulty" conclusion also was based on evidence Voisine has poor peer relations, refuses to admit to his offenses, has a lack of concern for his family members, desires to return to a home where predatory conduct occurred and to a family which enabled his predatory conduct, and he has not worked on plans for behavior modification which would give him the ability to control his behavior. The district court also stated, "[t]his Court does not believe that Voisine's participation in treatment has been meaningful or substantial. His progress notes indicate that he does not participate in any respect." The district court noted, "Dr. Byrne is of the opinion that Voisine demonstrates serious difficulty controlling his behavior and this would likely be worse in a less restrictive environment."

[¶12] Voisine argues the district court's finding are clearly erroneous. After fully reviewing the record, we agree. Dr. Byrne was asked, "[w]hat behavior, during this review period, are you pointing to that shows Raymond Voisine can't control his behavior?" Dr. Byrne responded:

> "The main issue that I see is his—he is not getting BAs [Behavioral Acknowledgments] or RBWs [Resident Behavioral Write-ups] as we discussed earlier. There is the concern associated with the denial of the offending that is not necessarily scientific but more pragmatic and related to treatment—related treatment progress and adherence to treatment progress.
>
> "And then the final thing is, you know, if there—I think I inferred from your—your questions, at least that's what I inferred, the medical conditions and/or his age and ability to attend to group because it appears that he's falling asleep and/or putting his hand over his head and it's not that he's not making progress, it's that he's not participating in the course of treatment.
>
> "Those things indicate that because he has a congenital-acquired condition he's going to have a serious difficulty controlling his behavior because he is not acquiring skills to manage those—those past problems and also his sexual risk."

6

[¶13] Voisine's apparent lack of progress and participation in treatment was a significant basis for finding he still was a sexually dangerous individual. The record shows the finding that "he does not participate in any respect" is not supported. The progress notes in Dr. Byrne's report state Voisine presented on multiple occasions, he was taking a more active role in his treatment and progressing. There also were periods where Voisine was stable but stagnant. Voisine still appeared to fall asleep in group, but on days when he was noted to appear sleeping he also presented and gave feedback to other residents. Further, Dr. Byrne testified, "it's not that he's not making progress."

[¶14] Taken as a whole, the evidence does not support the finding Voisine has not worked on plans for behavior modification which would give him the ability to control his behavior. Regarding RBWs, Dr. Byrne testified "[m]y understanding was the only thing was issues of old food found in his room, that type of a thing, but nothing significant *like in prior review periods*." (Emphasis added.) In his report Dr. Byrne noted,

> "Mr. Voisine has not demonstrated any significant overt behavioral problems on the unit throughout this review period. Perhaps the most appropriate factor to consider when assessing 'serious difficulty' in a residential treatment setting is the individual's progress in treatment over the review period. This best answers the question of 'what has changed' since they were committed or since their last annual review. . . . Mr. Voisine has made little progress within treatment. . . Mr. Voisine continues to demonstrate 'serious difficulty' controlling his behavior and this would likely be worse in a less restrictive environment."

[¶15] Voisine has two years in highly supervised conditions with only minor behavioral write-ups. In July 2018, Voisine received write-ups because staff found "excessive garbage, food from the food cart, dirty containers, gallon jug with water, pop bottle with soap and water, 2 state rags." Dr. Byrne and Dr. Benson noted this is improved behavior from previous reviews.

[¶16] The record shows Voisine participated in treatment and he is not a management problem. Instances of having extra food in Voisine's room do not establish a serious difficulty controlling behavior. *See In the Matter of R.A.S.*, 2019 ND 169, ¶ 11, 930 N.W.2d 162 ("The isolated instances of refusing two doses of prescribed medication do not establish a serious difficulty controlling behavior."); *J.M.*, 2019 ND 125, ¶¶ 15-16, 927 N.W.2d 422 (horseplay incident with another resident not clear and convincing evidence of serious difficulty); *Interest of T.A.G.*, 2019 ND 167, ¶ 11, 930 N.W.2d 166 ("The status in treatment and one statement regarding 'cream pie' do not establish a serious difficulty controlling behavior sufficient to satisfy the *Crane* due process requirement.").

[¶17] Appearing to fall asleep or putting one's hand over their head during treatment could be evidence supporting a finding that an individual has serious difficulty controlling his behavior. However, that isolated conduct over a year is not sufficient to establish serious difficulty controlling sexual behavior. Moreover, Voisine is a 76-year-old man with a heart condition, he is on medication for that heart condition, English is not his first language, and on some of the days he appeared to be sleeping in group the treatment notes also establish Voisine was participating. The lack of behavioral write-ups, progress in treatment, and the lack of evidence about how Voisine remains a threat runs counter to finding by clear and convincing evidence that Voisine has serious difficulty in controlling his sexual behavior.

[¶18] Voisine argues the finding he will not have the ability to control his behavior because he denies sexual misconduct occurred is not supported by evidence. Dr. Byrne testified he analyzed both static (actuarial test scores) and dynamic factors. *See R.A.S.*, 2019 ND 169, ¶ 8, 930 N.W.2d 162 (the district court found clear and convincing evidence of the third prong based on actuarial

8

test scores and dynamic risk factors). In response to the question, "because you're saying denial doesn't increase risk, correct?" Dr. Byrne testified, "as a static factor, no." Dr. Byrne testified, "And review of the risk literature does not indicate in a static sense that denial of offending is actually a risk factor which is somewhat counterintuitive, but when we start looking at risk in terms of dynamic risk factors, it can become problematic." Further, Dr. Byrne testified that an individual could "deal with things and still deny, such as accepting accountability for their risk or their perceived risk and working on it." On cross-examination Dr. Byrne testified, "my knowledge of literature would still be that denial of offending in terms of a static risk factor would not necessarily impact an individual's sexual risk level." Dr. Byrne testified that denial is problematic in trying to make progress because if an individual denies committing an offense it would be difficult, but not impossible, to create a risk plan for preventing an offense. He also testified because he does not see Voisine attempting to engage in treatment, Voisine is unable to make progress. When specifically asked about the *Crane* factor, Dr. Byrne testified, "There is the concern with the denial of the offending that is not necessarily scientific but more pragmatic and related to treatment—related treatment progress and adherence to treatment progress."

[¶19] Dr. Byrne also testified about the dynamic factors relating to Voisine's denial. The notes state, "Mr. Voisine denies any history of sexually offending and thus while he states he cares for his family/victims, he continues to negatively impact them via his denial." Further, Dr. Byrne's note states, "[h]e simply maintained denial of offending in this instance" and "Mr. Voisine continues to deny his offenses and also his need to be in civil commitment, thus holding others, rather than himself, accountable. Such a viewpoint is consistent with his loneliness and associated with negative mood states." Dr.

9

Byrne also noted, "denial of his conviction make his self-report not credible," and "Mr. Voisine's history is with a male grandchild and incestuous relationship with daughters which he denies and thus has not demonstrated any improvement on these [deviant sexual preference factor]." Finally, Dr. Byrne notes,

> "[h]is behavior/conduct on the unit appears to have improved, but his engagement, participation, and addressing of his treatment needs is still similar to that in past reviews, with his denying offending, falling asleep, not presenting when scheduled in group. Thus, he is not gaining the sexually risk reducing skills and interventions to reduce and adaptively manage his sexually risk."

[¶20] Dr. Byrne's dynamic factor notes on denial are not connected to Voisine's ability to control his behavior. They are connected to potential negative impacts on family members, loneliness and negative mood states, and credibility. The last note which indicates some connection relies on the claim Voisine is not participating in treatment. As noted, Dr. Byrne testified Voisine made progress in treatment, the record supports that Voisine participated in treatment and was progressing. Nonetheless, lack of progress in treatment *alone* is insufficient to meet this requirement for commitment. *Voisine*, 2018 ND 181, ¶ 21, 915 N.W.2d 647 (McEvers, J., concurring specially, VandeWalle, C.J., joined) (citing *Johnson*, 2016 ND 29, ¶ 7, 876 N.W.2d 25 (emphasis in original)).

[¶21] In 2018 we affirmed an order that Voisine remained a sexually dangerous individual based on findings that Justice McEvers in her concurrence described as "thin." *Voisine*, 2018 ND 181, ¶¶ 19, 21, 915 N.W.2d 647. Those findings were based on a lack of progress and participation in treatment, not attending group, and falling asleep during group. In this review period the record does not support the conclusion that Voisine was not progressing or participating in treatment. Voisine attended group regularly,

10

and when he was absent there was a legitimate reason like being ill. Evidence that a 76-year-old man whose first language is not English, is on medication for his heart condition, and sometimes appears asleep in group alone is insufficient to meet the requirement for commitment.

[¶22] The record as a whole does not support the finding by clear and convincing evidence that Voisine remains a sexually dangerous individual. Limited rule infractions and sporadic progress and participation in treatment relied on in this case do not establish that the risk posed by Voisine is distinguishable "from the dangerous but typical recidivist in the ordinary criminal case." *See R.A.S.*, 2019 ND 169, ¶ 11, 930 N.W.2d 162; *J.M.*, 2019 ND 125, ¶¶ 15-16, 927 N.W.2d 422; *T.A.G.*, 2019 ND 167, ¶ 11, 930 N.W.2d 166.

[¶23] The remaining issues and arguments raised by the parties have been considered and are unnecessary to our decision or without merit.

IV

[¶24] The order denying Voisine's petition for discharge is reversed.

[¶25] Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte
     Jon J. Jensen
     Gerald W. VandeWalle, C.J.